## TANNER *v.* THE STATE.

PER CURIAM.  1. Remarks of counsel while addressing the jury, which do not undertake to introduce any material fact not disclosed by the evidence, do not constitute sufficient ground for declaring a mistrial. *Western &c. R. Co.* v. *York,* 128 *Ga.* 687 (58 S. E. 183).

2. The charge on the law of confessions was authorized by the evidence.

3. The evidence was sufficient to support the verdict.

*Judgment affirmed.   All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent.*

No. 5532.   JULY 15, 1927.

Murder.   Before Judge J. B. Jones.   Union superior court. June 5, 1926.

At the April term, 1925, the grand jury of Union county returned an indictment charging Pence Tanner with the offense of murder, the indictment alleging that on April 12, 1920, the accused did kill Burrell Teague by shooting him with a shotgun. The accused was tried at the April term, 1926, and found guilty,

Criminal Law, 16 C. J. p. 896, n. 85; p. 1002, n. 16; p. 1143, n. 98.
Homicide, 30 C. J. p. 310, n. 25.

with recommendation "to the mercy of the court." In the trial the main witness for the State was Virgil Johnson, who had pleaded guilty to his part in the crime, and is now serving a life sentence in the penitentiary. He testified in substance as follows: He is a son-in-law of Mrs. Deavers, with whom he lived. The deceased had been a frequent caller at the Deaver home to see May Jarrett, a married daughter of Mrs. Deavers, who had separated from her husband and was living with her mother. There was no objection to Teague's visits until sometime before the killing, when Mrs. Deavers discovered the deceased having sexual intercourse with her daughter, May Jarrett. Mrs. Deavers then asked witness if he could not stop the deceased from coming to her house. Witness told her no, but she kept after witness until she got him to carry a gun down to one King's, who said, "put it off until next Sunday . . that the man wasn't there." Witness carried the gun back to Mrs. Deavers, and the next Saturday she told witness to hide the gun in the woods so he could get it Sunday night, when she wanted him to carry the gun to King's or Pence Tanner's, who would meet witness "at a certain place." Witness carried the gun there, and Tanner, the defendant, met him. He gave Tanner the gun. Tanner went down to the road running from the deceased's home to Mrs. Deavers', about three hundred yards from where witness was standing. In a few minutes witness heard a gunshot, and in three or four minutes Tanner returned the gun to witness and said, "I got him." Witness heard Teague holloa after the shooting, but did not see him that night. Witness and Tanner had never talked about what they were going to do. Witness did not know about Tanner being in it until that night. Mrs. Deavers told witness all that was going to be done. Witness and Tanner had no conversation about the murder as they walked away from the place where Tanner returned the gun. Witness made different affidavits about the crime while confined in jail, "some one way and some the other way." He made those exonerating King and Tanner, because they and their lawyers kept after him to do so. What he is now testifying is the truth. He did not see the shot fired. At the time he met Tanner and the killing took place it was a little after dark. He was confined in jail after his arrest, but escaped, being forced to do so by King and Tanner.

The State introduced testimony showing the discovery and con-

dition of the body of the deceased on Monday morning following the killing on Sunday night, as related by the witness Johnson. Also the testimony of the sheriff of Union county, to the effect that when he arrested the defendant sometime after October, 1925, he found him sleeping in a mill-house in White County, and that the door of the mill was locked from the outside, and Tanner was fully dressed. Also the testimony of Jim Bingham, who stated that a year or so before the trial he had heard Pence Tanner say "he had shot one, and wouldn't care to shoot another if he fooled with him." This statement was made while Tanner was in a crowd which was quarreling. Also the testimony of Garnet Swain, that about four years before the trial he and Tanner were working on the road, and Tanner asked witness if he ever knew Teague, "and I told him I didn't; and he says, 'The night that Teague got killed I was out in the woods there.' About that time another team came up behind us and stopped him, or I couldn't understand him further." Also the testimony of Luce Anderson, that on the occasion to which the witness Bingham referred Tanner had said in his presence that "he had killed one man, but he didn't say who it was, and that he could kill another." Mrs. Deavers did not testify. The defendant made a statement in which he denied any participation in or knowledge of the crime, declaring that he did not know the deceased, and had never been at Mrs. Deavers' but one time, which was some six months before Teague was killed. He also related in detail his whereabouts on the night of the homicide.

The defendant filed a motion for a new trial, based upon the three usual general grounds. By amendment he added two special grounds, the first of which is based upon alleged error of the court in refusing to grant a mistrial, on motion by the defendant, on account of alleged improper argument of counsel assisting the solicitor-general in the trial of the case, as follows: "The testimony of this case shows that as soon as Virgil Johnson came in contact with his brothers and that when he was surrounded by them, and the presence of a number of witnesses, says: 'Yes, brothers, I am guilty, but in the commission of this crime I was not acting alone, I didn't commit it alone, and I am willing to assume my responsibility for what I did, but there was another.' He didn't wait until he was carried to jail, or until his brothers could get him away, but told them, 'I am guilty—I was into this,

but there was another,' and that was none other than Pence Tanner. And from that day to this they have been trying to convict Pence Tanner, and they went out and arrested him and have been trying to convict him since, and I believe you are going to convict Pence Tanner." The defendant objected to this argument, "because the same were statements outside of the record in the case," and moved for a mistrial. The court said to the jury, "You must be governed by the evidence and what the evidence is, and I will ask counsel to confine his argument to the evidence in the case, and I will overrule the motion." The court did not rebuke counsel; did not further instruct the jury to disregard such statement of counsel, either at the time, or in his charge to the jury. The second special ground of the motion is based upon alleged error of the court in charging the jury upon the subject of confessions; it being insisted that it was error to give in charge the excerpt set forth in this ground, because there was no evidence of a confession to support or authorize this charge. The trial judge overruled the motion, and exception was taken.

*C. H. Edwards* and *O. J. Lilly,* for plaintiff in error.

*George M. Napier, attorney-general, Robert McMillan, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

RUSSELL, C. J., dissenting. The defendant in the lower court moved for a new trial upon two special grounds, both of which in my opinion require the grant of another trial in which the accused should have his case submitted to a jury of his peers, unaffected by two circumstances which tended to prejudice his right to such a trial in the previous adjudication.

1. The associate counsel for the State, Honorable T. S. Candler, as appears from the ground of the motion approved by the court, "is an influential and prominent attorney, and one of the leading members of the bar of his county; held in the highest esteem and respected by the jurors and citizens of that county." In arguing the case in behalf of the State, this learned and popular attorney, whose influence can not be underestimated, said: "The testimony of this case shows that as soon as Virgil Johnson came in contact with his brothers and that when he was surrounded by them, and in the presence of a number of witnesses, says: 'Yes, brothers, I am guilty, but in the commission of this crime I was not acting alone, I didn't commit it alone, and I am willing to assume my

responsibility for what I did, but there was another.' He didn't wait until he was carried to jail, or until his brothers could get him away, but told them, 'I am guilty—I was into this, but there was another,' and that was none other than Pence Tanner. And from that day to this they have been trying to convict Pence Tanner, and they went out and arrested him and have been trying to convict him since, and I believe you are going to convict Pence Tanner." The defendant objected to this argument at the time, because the statements were outside the record, and moved the court for a mistrial. The court overruled the motion for a mistrial, and in lieu and instead merely said to the jury: "You must be governed by the evidence and what the evidence is, and I will ask counsel to confine his argument to the evidence in the case, and I will overrule the motion." The court did not rebuke the counsel; did not instruct the jury to disregard statements already made by counsel, either at this time or later in his charge to the jury. · With all due deference to the opinion of my learned colleagues, I can not bring myself to a concurrence in the opinion that the very able and distinguished trial judge (whose character and ability have for years commanded my admiration) did not err in his ruling that this ground of the motion affords no basis for the grant of another trial. A careful review of the record shows that while the accomplice Johnson himself swore that he admitted his guilt to his brothers, and told them that Tanner was also guilty, there is no evidence with reference to the details of this meeting as pictured by eloquent counsel, showing what else passed between the convict Johnson and his brethren and other alleged witnesses, and neither Johnson nor any other witness testified that Johnson's brothers or the other persons mentioned by counsel had "from that day . . been trying to convict Pence Tanner," or that any of the persons named went out and arrested him. To the contrary, the only evidence on that subject shows he was arrested by the sheriff and his assistants. Even if they had testified as to the efforts of his brothers and others to convict the accused, the testimony of the acts of these outsiders was entirely irrelevant and prejudicial. The statement of the learned counsel of his confidence in the belief that the jury would stand by him in his contention for the conviction of Pence Tanner because also Johnson's brothers were anxious for him to be convicted, as embodied in the concluding sentence, "and *I* believe

*you* are going to convict Pence Tanner," was an appeal to the jury which can not be made with propriety. The learned trial judge did not instruct the jury that they should disregard this allegorical scene dramatized for the jury by the fervid imagination of eloquent counsel, nor suggest to the jury the impropriety of counsel casting the weight of his well-deserved popularity into the scales against the accused, into which had already been placed an appeal to the zeal of Johnson's brothers (who also may be popular and influential citizens), in pressing for a conviction on account of their belief in the truth of the statement made by him to his brothers.

Whenever it is sought to use the personal weight and influence of counsel as a means of obtaining a verdict, there is a departure from the orderly procedure which should characterize a trial in court, and it must be assumed to be prejudicial to the losing party in the cause. Such an occurrence as that just stated casts upon the opposite party the burden of showing that the cause of the losing party was not affected or prejudiced thereby. Under frequent rulings of this court, undoubtedly the defendant attempted to employ the proper remedy by moving for a mistrial, and it is equally true that under certain circumstances a sufficient substitute for the grant of a mistrial may be found in withdrawing or ordering to be withdrawn prejudicial remarks made by counsel, and giving explicit directions to the jury to pay no attention to such remarks, for the reason that there was no evidence to authorize such argument. Whether had the judge expressly told the jury that the remarks were improper because there was no such evidence as that referred to by learned counsel, and after this distinct and official withdrawal of the argument had directed counsel to confine himself to the evidence as adduced in the trial, this might have been sufficient, it is not necessary to decide, because the learned trial judge did neither. The court's statement to the jury, that "you must be governed by the evidence and what the evidence is," did not by any means amount to a ruling that the language just used by the State's counsel was outside the record. It was rather a submission to the jury for their decision of the question as to whether there was no such evidence, as contended by defendant's counsel, with privilege to the jury, if they preferred to rely upon the statements of Mr. Candler, to say that his remarks were included within the evidence delivered upon the trial. And in saying further, "I

will ask counsel to confine his argument to the evidence in the case," the court did not, by the use of the words "in the future," or "in the further progress of his argument," or "during the remainder of his address to you" he "must confine himself to the evidence," make any ruling to indicate that the court was of the opinion that counsel had trespassed in any way upon the rule which forbids arguments not deducible from the evidence in a case. It may be said that the request to counsel to confine his argument to the evidence was in effect a rebuke to State's counsel. Treating it as such, we hardly think that unless this language was supplemented with a direction to the jury to pay no attention whatever to the argument it would be of sufficient weight to remove the injurious effect of which the plaintiff in error complains. The court certifies, in approving the ground, that he "did not rebuke counsel; did not further instruct the jury to disregard such statements of counsel either at the time or in his charge to the jury." As pointed out in *Pelham etc. Ry. Co.* v. *Elliott,* 11 *Ga. App.* 621 (5) (75 S. E. 1062), it is illegal and highly prejudicial to a fair and just administration of the rights of the parties for counsel in addressing the jury to comment upon matters not in proof. It is the duty of the trial judge to prevent such comments, and he should at least, upon a timely and appropriate request of the party likely to be prejudiced thereby, direct the attention of the jury to the impropriety of the argument and caution them against it. If statements of fact or comments unjustified by the evidence are made by counsel, and it is apparent that the impropriety may be prejudicial to the opposite party, and yet the court takes no action to apply any corrective measure, a new trial will be granted.

As said by Judge Nisbet in *Mitchum* v. *State,* 11 *Ga.* 615, 629 : "We have had occasion to consider the habit of counsel, in addressing the jury, of commenting upon matters not proven and not growing out of the pleadings before, and have been content with visiting it with a decided and emphatic disapproval. *Berry* v. *State,* 10 *Ga.* 522, 523. We entertain no shadow of doubt as to the necessity of pronouncing it, as we now do, illegal and highly prejudicial to a fair and just administration of the rights of parties, either on the criminal or civil side of the court. It is the duty of the court to prevent such comments, and in all cases where this is not done, provided the court is requested to prevent them,

we shall hold, as we rule in this case, that it is good ground for a new trial. . . In our judgment it is violative of the rights of the citizen litigant in the courts of justice; and if so, we are not at liberty to stop short of making it cause for a new trial. It is not foreign to the subject to say that it is the duty of counsel to guard, by the most scrupulous propriety of demeanor, in the conduct of a cause, the dignity and honor of the profession. . . Power and place—hereditary wealth—stupidity in high social position, and even genius, pandering to a popular taste for caricature, jealous of the power which it wields upon governments, have labored to degrade it. Still in this country and in England, if nowhere else, the bar is the ladder upon which men mount to distinction; the lawyer is the champion of popular rights; the class to which he belongs is more influential than any other; and counsel, yes, feed counsel, is indispensable to a fair and full administration of justice. When learning and character, and practised skill, and eloquence, and enthusiasm, chastened by discretion, are enlisted in behalf of the litigant, he may rest assured that he holds in his counsel the very best guarantee against all forms of wrong and oppression in the administration of the law. It is true that he is paid for his services—and what of that? Are not princes and premiers, presidents and priests, also paid? One thing never yet was bought with money, and that is the soul-engrossing identification of counsel with his client. . . The approval of conscience and the respect of good men are his reward; far richer than the stipulated fee of these days, or the honorarium of the Roman advocate. If I thus magnify the office of the counsel, it is for the purpose of saying that its very importance makes indispensable the exclusion of the habit which we now condemn. . . It is contrary to law for counsel to comment upon facts not proven. . . His illustrations may be as various as are the resources of his genius; his argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit, or wing to his imagination. To his freedom of speech, however, there are some limitations. . . Statements of facts not proven, and comments thereon, are outside of a cause; they stand legally irrelevant to the matter in question, and are therefore not pertinent. If not pertinent, they are not within the privilege of counsel. . . Trial by jury! How imperfect a privilege would that be, if the forms of law

32

were abandoned—if the rules of evidence were disregarded! An essential element in the trial by jury is that their verdict shall be rendered according to the facts of the case, legally produced to them. They are sworn to give their verdicts according to *evidence*, and if they find without evidence, or against evidence, a new trial will be granted. . . When counsel are permitted to state facts in argument and to comment upon them, the usage of the courts regulating trials is departed from, the laws of evidence are violated, and the full benefit of trial by jury is therefore denied. It may be said, in answer to these views, that the statements of counsel are not evidence; that the court is bound so to instruct the jury, and that they are sworn to render a verdict only according to the evidence. Whilst all this is true, yet the effect is to bring the statements of counsel to bear . . with more or less force, according to circumstances; and if they in any degree influence the finding, the law is violated, and the purity and impartiality of the trial are tarnished and weakened. . . It is not reasonable to believe that the jury will disregard them. They may struggle to disregard them; they may think that they do disregard them, and still be led involuntarily to shape their verdict under that influence. That influence will be greater or less, according to the character of counsel, his skill and adroitness in argument, and the naturalness with which the statements stand connected with other facts and circumstances in the case. To an extent not definable, yet to a dangerous extent, they are evidence, not given under oath—without cross-examination, and irrespective of all those precautionary rules by which competency is tested."

2. In the second ground of the amendment to the motion for a new trial the complaint is made that the judge charged the jury upon the subject of confessions. It is not insisted that the instruction as delivered by the court is not correct as a matter of substantive, abstract law. Exception is taken, as I think properly, upon the ground that the evidence in the case did not authorize any instruction whatever upon the subject of confessions. There is a world of difference between an inculpatory admission of some fact or circumstance of an incriminatory nature and the admission of the commission of the crime itself with which the accused stands charged. In the case at bar three admissions as to shooting or killing a man were made by the defendant, but nothing was said

by him indicating that the man he admitted to have shot or killed was Teague, the decedent, the murder of whom was charged in the indictment upon which the defendant was being tried. In this view of the case the admission fell far short of connecting the accused with the homicide of Teague, even though he might have killed some other man or any number of others. And likewise, his alleged statement that he was out in the woods the night Teague was killed was not a confession. For this reason, under the rulings in *Dumas* v. *State,* 63 *Ga.* 601 (5), *Covington* v. *State,* 79 *Ga.* 687 (7 S. E. 153), *Fletcher* v. *State,* 90 *Ga.* 471 (17 S. E. 100), *Nightengale* v. *State,* 94 *Ga.* 395 (21 S. E. 221), *Powell* v. *State,* 101 *Ga.* 18 (4) (29 S. E. 309, 65 Am. St. R. 277), *Lee* v. *State,* 102 *Ga.* 221 (29 S. E. 264) ; *Davis* v. *State,* 114 *Ga.* 109 (8) (39 S. E. 906), *Owens* v. *State,* 120 *Ga.* 296 (3) (48 S. E. 21), and *Shellman* v. *State,* 157 *Ga.* 788, 792 (122 S. E. 205), we think it was error to instruct the jury at all upon the subject of confessions. Even though these instructions were unusually favorable to the defendant on trial, still the very suggestion to the jury of the law applicable to confessions and the statement of the court itself allowed the jury to determine whether or not a confession had been made, upon a foundation insufficient to authorize the submission of that question to them. The court, and not the jury, must determine the competency of the evidence requisite to establish a prima facie case of a confession which the jury may accredit if sufficiently corroborated. It is wise and proper for the court, in many instances of doubt, to submit the question as to whether a confession was made to a jury. But where it is plain that the case involves only an inculpatory admission and not a plenary confession, it is error to charge at all upon the subject of confessions. The natural tendency of the human mind to attach unusual weight to a plenary admission or confession of guilt is so general, so well-nigh universal, that an instruction from the bench upon the law of confessions when the same is inappropriate must at least tend to confuse jurors who are not supposed to be learned in the law, and is most likely to mislead them as complained in the present instance.

ATKINSON, J., dissents from the ruling in the second headnote.