36602. WESTERN & ATLANTIC RAILROAD *v.* HART.

DECIDED MAY 24, 1957.

Sam J. Welsch, John Sammons Bell, for plaintiff in error.

J. B. White, Jere F. White, Ingram & Tull, William A. Ingram, contra.

CARLISLE, J. ■ In special ground 1 (numbered 4) of the motion for new trial, complaint is made of the trial court's refusal to grant a mistrial over the defendant's objection that counsel for the plaintiff had improperly referred in his argument to the jury to the dependency on the plaintiff of his wife and three children when such dependency had been expressly purged from the petition and there was no evidence of such dependency on the trial. "In all motions for mistrial, the grant of the motion 'is largely within the discretion of the trial judge, and this discretion will not be interfered with unless manifestly abused' [citing numerous cases]. Usually cautionary instructions to the jury by the judge . . . will suffice to cure irregularity and remove prejudice [citing numerous cases]." *Grayhouse* v. *State*, 65 *Ga. App.* 853, 855 (16 S. E. 2d 787); *Malone Freight Lines* v. *Pridmore*, 86 *Ga. App.* 578, 583 (71 S. E. 2d 877); *Southern Ry. Co.* v. *Tudor*, 46 *Ga. App.* 563 (21) (168 S. E. 98).

It appears from this special ground of the motion for new trial that the trial court instructed the jury as follows: "Gentlemen of the jury, you will disregard any argument made by the plaintiff's counsel in regard to any dependency of this plaintiff's wife or children on him. There is no evidence of that, and it is improper in this case; so you will disabuse your minds of that, get that out of your minds and let it have no bearing whatsoever on your minds in considering this case."

In the light of the foregoing cautionary instructions by the trial court to the jury, we think the trial court did not abuse its discretion in refusing the defendant's motion for a mistrial.

■ In special ground 2 (numbered 5) error is assigned upon the admission of the following evidence and the rulings thereon: "Q. Tell the jury how you felt? A. Well, my ribs gave me a lot of trouble and my head. (Mr. Welsch (attorney for defendant): If I recall, there is no allegation in this petition with reference to the broken ribs and there is no prayer for recovery by reason of broken ribs, and any information in regard to it, unless it is alleged, I object to it. The Court: Upon the matter of pain and suffering, I overrule the objection."

We think the court properly admitted this evidence on the question of pain and suffering, as it is alleged in the petition that "almost every part of plaintiff's body was broken and injured so that he suffered excruciating pain therefrom, and will continue to suffer great pain from the aforesaid injuries the rest of his life."

■ In special ground 3 (numbered 6) complaint is made that the following questions, answers, and ruling of the court, while the plaintiff was on cross-examination, deprived the defendant of a thorough and sifting cross-examination and the trial court's ruling constituted an intimation of opinion: "I don't know how fast I was traveling when I started pulling off there; I never have paid any attention to that, but it was very slow; you can't travel that ramp fast, because it has got ruts in it. The ramp is holey and rutty there, and you have to approach the crossing at a very slow speed, if you don't you may turn into a car coming over the ramp and have a head-on collision. Q. Regardless of the condition there, I asked you the simple question, how fast or how slow you were driving; did you understand that question? A. Yes, sir. Q. I asked you did you have in your judgment an estimate as to how fast, or how slow—Do you or not? A. Well, I have never noticed a speedometer going over there, but very slow. Q. Well, that is too indefinite for me; give us some idea as to what it was; you were the driver of the car? Mr. Ingram (attorney for plaintiff): He has already told him that he doesn't know. The Court: I sustain the objection. Mr. Welsch: Do I

understand your ruling—The Court: He said it twice, and don't argue with him; you can't argue with a witness; you can ask him that, but don't argue with him. It takes up a lot of time. If you want to show a previous contradictory statement you can ask him about that and the time and place, but he said he didn't know."

"The right of a thorough and sifting cross-examination belongs to every party as to the witnesses called against him. The extent and scope of such cross-examination is not unlimited. It is within the discretion of the trial court to enforce such restrictions as are necessary to prevent the repetition of questions as to matters already fully developed on cross-examination." *Simmons* v. *State*, 72 *Ga. App.* 16 (3) (32 S. E. 2d 842), and citation.

The plaintiff had twice answered on cross-examination the question of counsel for the defendant, stating that he did not know at what speed he had proceeded up the ramp to the railroad track at the time of the collision; and, we think the trial court in restricting the cross-examination upon this point, which had already been fully covered, cannot be held to have intimated an opinion as to what had or had not been proved. See, in this connection, *Herndon* v. *State*, 45 *Ga. App.* 360, 361 (4) (164 S. E. 478); *Daniels* v. *Avery*, 167 *Ga.* 54 (3c) (145 S. E. 45). There is no merit in this ground.

■ In special ground 4 (numbered 7) error is assigned by the defendant upon the trial court's overruling its objections to the qualifications of a 12-year-old witness to give an estimate of the speed of the train, and upon the trial court's refusal to strike from the evidence, both from the direct examination and the cross-examination, her estimate that the train was going 60 miles per hour.

"The value of the opinion given . . . as to the speed of the train . . . based upon the facts . . . stated, or the sufficiency or insufficiency of these facts to authorize the opinion given by the witness, was a matter to be determined by the jury; and the court did not err in admitting the testimony." *Lamb* v. *Sewell*, 20 *Ga. App.* 250 (1) (92 S. E. 1011). Nor did the trial court err in permitting the witness to give her estimate of the speed of the train after she had stated the facts upon which she

based her estimate. Code § 38-1708. There is no merit in this ground.

■ Viewed in the light of the trial court's charge to the jury as a whole, the extracts in special ground 5 (numbered 8) are not subject to any of the criticisms lodged against them. The plaintiff in his petition charged the defendant with violating Code §§ 94-503, 94-504, 94-505 and 94-506. The case went to trial without the defendant's demurring to the petition, and the trial court charged each of the Code sections mentioned above. The fact that the trial court in its charge referred to Code §94-504 as dealing with the Blow Post Law, when it should have referred to Code § 94-506, could not have confused the jury, as the court charged the language of these sections. The fact that the plaintiff charged in his petition that a violation of Code § 94-506 with reference to the speed of the train was negligence per se, and the trial court gave this contention in charge to the jury could not have harmed the defendant as the trial court in its charge instructed the jury: "I charge you there is no law in this State regulating the speed of trains approaching public crossings, and the law as to trains approaching public crossings is set out in the language of Code § 94-506 which I have read to you." The defects in the plaintiff's pleadings should have been taken advantage of by demurrer and not by motion for new trial.

■ In his petition the plaintiff alleged that he was at the time of his injuries an able-bodied man, 29 years of age; he had a life expectancy of 35 years, according to the Carlisle Mortality Tables; he was earning and capable of earning the sum of $4,576 per year, but because of his injuries his earning capacity has been destroyed, and he is entitled to recover for the full value of his life. He further alleged that he was earning $88 per week at the time of his injury, and that because of the injuries, he will be unable to work in the future. In special ground 6 (numbered 9), error is assigned on the following excerpts from the court's charge to the jury: "The plaintiff also alleges that he has suffered a diminution of earning capacity; that is, that his power and ability to earn money has been diminished by reason of his alleged injury, that his capacity to labor and earn money has been destroyed or materially decreased by his injuries, as al-

leged. He alleges that his earning capacity at the time alleged was $88 a week, and that by reason of this injury he will not be able to earn as much, and he seeks to recover at your hands for his alleged decreased earning capacity, whatever that may be shown to be. The jury would take into consideration the facts in the case and apply all of the rules of law given you in charge, and determine what amount of damages the plaintiff is entitled to recover, if he is entitled to recover at all. Now if you find that he is entitled to recover for loss of future earning ability, then you would consider the fact that people don't always work constantly, that there are times of unemployment, sometimes from illness, people are not able to work, sometimes they voluntarily abstain from work, and you will take those facts into consideration; and also the fact that if he recovers for diminished earning capacity that the money would be paid him in one lump sum, and that it would be worth more than if paid him as he earned it over a period of time, because he would be having the use and the interest on that money. And the legal rate of interest at this time for the use of money in Georgia, the maximum rate is seven percent per annum. Now, gentlemen, there has been introduced in evidence in this case certain tables known as mortality tables; and the jury may or may not use such tables as they see fit and if it is necessary to do so. The purpose of this table is to show the expectation in life of the average person of a given age as determined by the compilers of this table over a wide range of observation. The age you will observe is listed in the first column, and the expectation in years is found in the second column immediately opposite the age. It can not be assumed that the ordinary life of parties at this time was more than that of the average person. It is a question of fact, however, for the jury to determine, and the jury will look to the evidence, and consider the age of the party, his habits of life, state of health, and any other fact that would illustrate his probable expectation in life at this time. . . If you find for the plaintiff, you would not return separate items for pain and suffering, *loss of earning capacity*, doctor's bills, loss of time from work, but you would add all that up and put that in one amount, and let that be what you find, if you find for the plaintiff

in the way that I have instructed you."

In a suit for damages for personal injuries, it is error for the court to charge the jury on the right of the plaintiff to recover for a decreased earning capacity (loss of future earnings) where it appears from the evidence that the plaintiff at the time of the trial was making more in the same work at the time of the trial than at the time of his injuries. *Atlanta Coca-Cola Bottling Co.* v. *Deal*, 66 *Ga. App.* 211 (17 S. E. 2d 592), and the numerous cases there cited. See especially *Rome Railway &c. Co.* v. *Duke*, 26 *Ga. App.* 52 (105 S. E. 386).

■ As the case must be remanded for a new trial because of the error pointed out in Division 6 of this opinion, the general grounds are not considered at this time.

*Judgment reversed. Gardner, P. J., and Townsend, J., concur.*