BEHRINGER, Plaintiff and Respondent, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and another, Defendants and Respondents: LEFFEL and another, Defendants and Appellants.

*February 6—March 3, 1959.*

596

For the appellants there was a brief by *Genrich, Terwilliger, Wakeen, Piehler & Conway,* attorneys, and *Paul D. Hilton* of counsel, all of Wausau, and oral argument by *Walter H. Piehler.*

For the respondent Ella Behringer there was a brief by *Smith, Okoneski, Puchner & Tinkham,* and oral argument by *Charles F. Smith, Jr.,* all of Wausau.

For the respondents State Farm Mutual Automobile Insurance Company and Robert Behringer there was a brief by *Schmitt & Wurster* of Merrill, and oral argument by *Leonard F. Schmitt.*

Currie, J.  The issues raised upon this appeal are:

(1) Was Robert Behringer's negligence as to lookout causal as a matter of law?

(2) Did the trial court commit prejudicial error in instructing the jury that they might consider impairment of the plaintiff's earning capacity in fixing the amount of her damages in view of the absence of any evidence that her earning capacity had been impaired?

(3) Did the trial court commit prejudicial error in refusing to give a requested instruction that any damages awarded to the plaintiff would be free of state and federal income taxes?

## Causation Issue.

In resolving the first issue it is the duty of this court to determine whether there is any credible evidence which will support the jury's finding, that Robert Behringer's negligence in failing to keep a proper lookout, was not causal. The drawing of reasonable inferences from the evidence presented constitutes part of the function of fact finding which is vested in the jury.

The evidence is undisputed that Leffel had actuated his directional signal lights, which indicated that he was about to make a left turn, when the Leffel car was at least 100 feet east of the intersection, and that such signal lights continued to flash up until the occurrence of the collision. Nevertheless, Behringer testified that he did not see such flashing directional signal lights, although he testified that he saw the Leffel car when it commenced to make its left turn into the path of the Behringer car. Construing the evidence most strongly in favor of sustaining the verdict, the jury could well have based its finding of negligent lookout on the part of Behringer solely upon the fact that he failed to see the flashing directional signal lights of the Leffel car.

As Behringer approached the intersection he was traveling at a speed of 35 to 40 miles per hour. The Leffel car had pulled out of a churchyard onto the highway not far from the intersection and was proceeding at a speed of 20 to 25

miles per hour which was reduced to 15 miles per hour when the making of the left turn was commenced. Behringer testified that he was only 30 feet west of the intersection when the Leffel car began the left turn, and that the latter vehicle was then 20 feet east of the intersection. The traveled portion of the town road was but 18 feet in width. If the jury accepted this testimony of Behringer as being true, then but 68 feet of distance separated the two cars when Leffel commenced making the left turn. Behringer testified that he immediately applied his brakes. It is apparent from the skid marks laid down by the Behringer car and the point of impact, which occurred in the southeast corner of the intersection, that Behringer also must have turned his car slightly to the right in his futile attempt to avoid a collision.

The jury could well have found that, if Behringer had seen such flashing directional lights, he should have slowed down his speed so as to have his car under such control that he could have avoided a collision if Leffel did turn left in Behringer's path. However, the jury could also reasonably have concluded that Behringer had the right to continue at his existing rate of speed on the assumption that Leffel would not violate the law by turning left directly into Behringer's traffic lane. The purpose of activating directional signal lights, so as to indicate a left turn, usually is to warn traffic to the rear proceeding in the same traffic lane that the driver will be slowing down or stopping so as to permit approaching traffic in the opposite traffic lane to clear the intersection before the left turn will be begun. Because the jury could reasonably have arrived at either of these two conclusions, whether Behringer's negligent lookout was causal presented a jury issue. It cannot be resolved as a matter of law contrary to the jury's express finding.

The appellants cite *Wiley v. Fidelity & Casualty Co.* (1958), 3 Wis. (2d) 320, 324, 88 N. W. (2d) 366, and *Bailey v. Zwirowski* (1954), 268 Wis. 208, 212, 67 N. W.

(2d) 262, as holding that Behringer, if he had seen the flashing left-turn signal lights of the Leffel car, would have had no right to assume that Leffel would not make a left turn in the path of the approaching Behringer car. Both the *Wiley* and *Bailey Cases* were concerned with situations of negligent lookout on the part of a driver who did not look, and, who, if he had looked, would have discovered a situation where it was readily apparent that the other driver was going to violate the law, or had already begun to do so, thereby imminently threatening a collision. This court in those cases held that the failure to look and see such threatened danger could not be excused on the ground that the party failing to look had the right to assume that the other driver would obey the law. The distinguishing feature of the instant case is that, if Behringer had seen the flashing directional lights, he would not have been apprised of a situation where there was any indication that the other driver was about to violate the law. Such violation did not occur until Leffel commenced the left turn, and Behringer, according to his own testimony, saw this as soon as it began.

*Instruction as to Impairment of Earning Capacity.*

The trial court submitted but one question in the special verdict inquiring as to the plaintiff's damages. Such question read as follows:

"What amount of damages did the plaintiff, Ella Behringer, sustain by reason of said collision?"

In instructing the jury with respect to the elements comprising the damages to be taken into consideration in answering such question, the learned trial court stated one of such elements to be the plaintiff's "ability to make earnings which she has lost by reason of the disability resulting from said injuries, which is the difference, due to the injury, be-

tween her earning capacity before the injury and her earning capacity after the injury." Such instruction had been requested by plaintiff's attorneys.

There can be no question but that this was a proper instruction if there was any evidence in the record tending to establish an impairment of earning capacity due to the collision. *Dietz v. Goodman* (1950), 256 Wis. 370, 374, 41 N. W. (2d) 208, and Restatement, 4 Torts, p. 631, sec. 924, and comment *d,* pp. 634, 635. The difficulty is that we are unable to find any evidence in the record which would support the giving of such instruction.

The plaintiff was born August 20, 1924, and was thirty years of age at the time of the accident. She was married and the mother of two small children. Prior to the accident she had been employed on a part-time basis in a beauty parlor at an average weekly wage of $15. She resumed such work on December 14, 1954, and there is no evidence but that her earnings were as high subsequent to such resumption of her employment as they had been prior to the accident. She continued to work at such part-time employment until August, 1955. She then stopped working, not because of her injuries, but to care for her children. Thereafter, she operated her own beauty shop in her home under the name of Ella's Rib Mountain Beauty Shop.

Construing the evidence relating to the permanency of plaintiff's injuries most favorably to her, such injuries are a two-inch scar extending downward from the outer corner of the right eye; an inch-and-a-half scar extending upward from the same corner of the eye; a numb area above the right eye; a watering and twitching of the right eye; a probable injury to the bursa of the right knee which causes this area to hurt when the plaintiff kneels upon it; and a residual from a fracture of the left thumb which causes the thumb to hurt when heavy objects are lifted. These results were all present dur-

ing the three years and one month which elapsed between the plaintiff's resumption of work on December 14, 1954, and the date of trial. If any of such permanent injuries were going to impair the plaintiff's earning capacity, such impairment most likely would have manifested itself during such period. In the absence of any evidence that such impairment so occurred, it was error to have given the instruction complained of.

This court has held that a jury should not be permitted to speculate as to the amount of future expense of medical treatment it should award as damages in the absence of any evidence as to the probable cost of the same, and that it was reversible error to instruct the jury that it might consider such an item in awarding a lump sum as damages. *La Fave v. Lemke* (1958), 3 Wis. (2d) 502, 509, 89 N. W. (2d) 312. We deem that the principle of such holding is applicable to the instant situation.

A case directly in point on this issue is *Atlanta Coca-Cola Bottling Co. v. Deal* (1941), 66 Ga. App. 211, 17 S. E. (2d) 592, in which the trial court gave a charge similar in nature to that here being considered, and there was evidence that the plaintiff had sustained a permanent injury to his hand. The court held the instruction to have been erroneous, and declared (p. 214) :

"In this case the plaintiff at the time of the trial was engaged in the same work as at the time of the injury. There was no evidence whatever going to show that his earning capacity in that business, or in any other work in which he could engage, was diminished because of his injury. The charge complained of was error, and the court erred in overruling the motion for new trial."

A later Georgia case in which this same rule was applied is *Western & Atlantic Railroad v. Hart* (1957), 95 Ga. App. 810, 99 S. E. (2d) 302.

We have no difficulty in finding the erroneous instruction in question to have been prejudicial. The plaintiff's special damages for loss of earnings between September 12, 1954, and December 14, 1954, and for damage to her clothing approximated the sum of $265, leaving $9,000 of the total damages of $9,265 awarded to apply against pain and suffering, permanent injuries, and impairment of earning capacity. We cannot assume that the jury did not include in such $9,000 figure something for impairment of earning capacity. Because we hold this instruction to have been prejudicial as well as erroneous, a new trial must be directed upon the issue of damages.

*Failure to give Requested Instruction with Respect to Income Tax.*

The appellants request that this court review the trial court's refusal to give the following requested instruction:

"You are further instructed that in determining the amount of damages for personal injuries you are not to add to or include in the award of damages anything to compensate the plaintiff for federal or state income taxes, since any damages recovered as an award for personal injuries are not subject to and therefore are free of either federal or state income taxes."

We had a similar issue before us in the recent case of *Hardware Mut. Casualty Co. v. Harry Crow & Son, Inc.,* ante, p. 396, 94 N. W. (2d) 577. We held that it was not prejudicial error not to give the instruction on income tax there requested. We reach the same conclusion here, as we cannot hold that the failure to give such an instruction resulted in prejudice to the appellants. This same conclusion was expressed in *Atherley v. MacDonald, Young & Nelson* (1956), 142 Cal. App. (2d) 575, 298 Pac. (2d) 700, 709, which decision implies that such instruction if given would

be proper. For reasons pointed out in the *Hardware Mut. Casualty Co. Case, supra,* if the instruction is given, it should state not only that the jury is to add nothing to the award of damages because of nonliability for income tax but also that nothing is to be deducted from the award because of such factor.

In passing it might be noted that 2 Harper and James, Law of Torts, pp. 1327, 1328, sec. 25.12, favors the giving of an instruction with respect to income tax.

### Excessive Damages.

The appellants raise the additional issue that the damages awarded are excessive. Inasmuch as there must be a new trial upon the issue of damages, we find it unnecessary to pass upon such issue.

*By the Court.*—That part of the judgment which dismisses the complaint and cross complaint against the defendants Robert Behringer and State Farm Mutual Automobile Insurance Company is affirmed; and the remainder of the judgment is reversed, and the cause remanded for a new trial confined to the issue of damages only.