42588.   CONTINENTAL CASUALTY COMPANY et al. v. WILSON-AVERY, INC.

ARGUED FEBRUARY 7, 1967—DECIDED MAY 3, 1967—REHEARING DENIED MAY 22 and MAY 30, 1967—

*Duncan Graham, Martin, Snow, Grant & Napier, Cubbedge Snow,* for appellants.

*Melton, McKenna & House, Mitchell P. House, Jr.,* for appellee.

BELL, Presiding Judge. ■ Both of defendants' special demurrers confuse the distinction between a special demurrer which seeks to eliminate superfluous matter, the sustaining of which results in striking the unnecessary matter, and one which objects to allegations for uncertainty and indefiniteness or which for some other reason seeks to have the plaintiff allege additional matter. Ga. Procedure and Practice § 9-13, p. 223. Special demurrers which confuse this distinction do not meet the requisite standard of perfection. *Hughes v. Jackson,* 109 Ga. App. 804, 808 (137 SE2d 487) ; *Ogletree Hatchery, Inc. v. Eshelman & Sons, Inc.,* 113 Ga. App. 761, 764 (149 SE2d 923). It was not error to overrule these demurrers.

■ Defendants contend that most of the alleged extra work was required by the subcontract. It is elementary that if the disputed work was included in the work specified by the subcontract to be performed for a lump sum, plaintiff's claim to additional compensation for the performance of this work must fail for want of consideration. *Willingham Sash &c. Co. v. Drew,* 117 Ga. 850 (2) (45 SE 237). However, the subcontract did not obligate plaintiff to paint or finish surfaces which the plans contemplated would be prefinished before installation at the job site.

The subcontract contained the following provision: "All work shall be done under the direction of the architect and his decisions as to the true construction and meaning of the drawings and specifications shall be final. Subcontractor shall conform to and abide by any additional specifications, drawings or explanations furnished by the architect to illustrate the work to be done." During the progress of construction the architect furnished additional specifications which were introduced in evidence on the trial. One set of additional specifications was a "Paint Color Schedule" for those portions of the construction which were to be painted at the job site. Another set listed "Color Selections of Prefinished Materials," setting forth items

which were to be furnished in colors applied prior to installation. "Where parties to a building or construction contract designate a person who is authorized to determine questions relating to its execution, and stipulate that his decision shall be binding and conclusive, both parties are bound by his determination of *those matters which he is authorized by the contract to determine,* except in case of fraud, or of such gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment." *State Hwy. Dept. v. MacDougald Const. Co.,* 189 Ga. 490, 494 (6 SE2d 570). See 13 AmJur2d 36, Building and Construction Contracts, § 34; Ann. 54 ALR 1255; Ann. 110 ALR 137.

The drawings and original specifications in this case did not clearly identify all those materials which were to be prefinished and those which were to be job-finished. Nor did the subcontract classify these materials. The architect having made a classification, his interpretation was binding under the authority of *MacDougald,* supra. The jury was authorized to find that most of the alleged extra work was embraced in the architect's list of "Color Selections for Prefinished Materials," was not included in the "Paint Color Schedule," and thus was not required by the subcontract.

A part of the work in dispute was necessitated when the architect found certain surfaces previously finished by plaintiff to be defective by reason of faulty work either of the prime contractor or of another subcontractor. In this connection see *Mion Chemical Brick Corp. v. Daniel Constr. Co.,* 111 Ga. App. 369 (1) (141 SE2d 839). The specifications, which were made a part of the subcontract, stipulated: "The contractor shall examine the specifications and job conditions before starting any painting and if he is not satisfied with the conditions thereof, he shall call the matter to the attention of the architect in writing. After commencing his work the contractor shall be held responsible for the final results." The evidence disclosed that prior to painting the surfaces in question, plaintiff called the faulty work to the attention of the prime contractor's general superintendent, who instructed plaintiff to paint these surfaces in their existing condition. With respect to this portion

of the work, the prime contractor must be held to have waived the right to rely on the quoted stipulation.

As to the remaning items of extra work, defendants concede that the repainting of certain doors and the finishing of plywood panels which the original plans clearly required to be prefinished were not covered in the subcontract.

The third and fourth enumerations are without merit.

■ In his concluding argument to the jury plaintiff's counsel stated: "Let the burden fall where it belongs, on the man with the three-quarters of a million dollar contract, not on the man with the $12,000 contract." The trial court overruled defendants' motion for mistrial, and neither rebuked counsel nor gave the jury cautionary instructions. One enumeration alleges that the court erred in refusing to declare a mistrial on account of this misconduct of plaintiff's counsel.

Remarks of counsel amount to misconduct and may require corrective action or mistrial even where the remarks are in some way related to the evidence if the argument is unfairly calculated to arouse passion or prejudice. See *Farmer v. State,* 91 Ga. 720, 728 (18 SE 987); *Moore v. State,* 10 Ga. App. 805, 812 (74 SE 315); *City Council of Augusta v. Hamilton,* 56 Ga. App. 859, 862 (194 SE 244); *Brown v. State,* 110 Ga. App. 401, 404 (138 SE2d 741). Argument referring to the wealth or poverty of a party or contrasting the financial status of one party with that of another is universally condemned. *Southern R. Co. v. Black,* 57 Ga. App. 592, 594 (196 SE 291); *John J. Woodside Storage Co. v. Reese,* 105 Ga. App. 602 (6) (125 SE2d 556); *American Cas. Co. v. Seckinger,* 108 Ga. App. 262 (3) (132 SE2d 794). See Ann. 32 ALR2d 9.

However, the trial court has a broad discretion in passing upon a motion for mistrial based on improper remarks of counsel. *McCoy v. Scarbrough,* 73 Ga. App. 519, 523 (37 SE2d 221); *Western & A. R. v. Hart,* 95 Ga. App. 810, 816 (99 SE2d 302); *Travelers Indem. Co. v. Wilkes County,* 102 Ga. App. 362, 365 (116 SE2d 314); *Lanier v. Lee,* 111 Ga. App. 876, 878 (143 SE2d 487). This court will not interfere with the trial court's discretion unless it can be shown that that discretion was manifestly abused and that positive injury was done by the

remark. *Spence v. Dasher*, 63 Ga. 430, 432 (2); *Inman v. State*, 72 Ga. 269 (3); *Western & A. R. Co. v. Morrison*, 102 Ga. 319, 322 (29 SE 104, 40 LRA 84, 66 ASR 173); *Adkins v. Flagg*, 147 Ga. 136 (2a) (93 SE 92); *Metropolitan Life Ins. Co. v. Saul*, 189 Ga. 1, 12 (5 SE2d 214).

The contracts showing the amounts alluded to were in evidence, and when the remark was made, the jury was already aware of the difference in these amounts. The remark did not refer to the wealth or poverty of either the prime contractor or plaintiff, but was a merely cumulative reference to the variance in the gross amounts of the contracts. These amounts alone did not intelligibly reflect the overall financial status of either of the parties, and therefore could not be taken as even a rough contrast of the financial ability of one party with that of the other. Under these circumstances the remark was not injurious to defendants, was not improper, and did not require either cautionary instructions to the jury or a new trial.

The peroration in this case comes within the general rule that remarks of counsel while addressing the jury which do not undertake to introduce any material fact not disclosed by the evidence do not constitute improper argument. *Code* § 81-1009; *Western &c. R. Co. v. York*, 128 Ga. 687, 689 (58 SE 183) and citations; *Tanner v. State*, 164 Ga. 490 (1) (139 SE 5); *Taylor v. State*, 39 Ga. App. 102, 104 (146 SE 334); *Caldwell v. Brown*, 80 Ga. App. 858, 863 (57 SE2d 618).

The trial court did not abuse its discretion in denying defendants' motion for mistrial.

■ The court did not err in refusing to admit into evidence the testimony of one of defendants' witnesses as to whether the architect's drawings specified the use of Novaply doors where the drawings clearly specified the use of this kind of doors where required. *Code* §§ 38-203, 38-205. It was not the purpose of the question on which plaintiff's objection was based to elicit testimony to explain the meaning of the term "Novaply doors" or the meaning of other technical or ambiguous terms in the drawings.

■ Generally, a witness who has no distinct and independent recollection of the details of a fact occurring in the routine

course of his business may testify to the fixed and uniform habit in such cases and state that he believes that what was done in a given transaction was in accordance with habit. *Leonard v. Mixon,* 96 Ga. 239, 241 (23 SE 80); *Burch v. Americus Grocery Co.,* 125 Ga. 153, 158 (53 SE 1008). But the application of this rule on the relevancy of evidence of habit is subject to the exception that what was done on the particular occasion in question must itself be relevant to the issues in the case. *Georgia Midland &c. R. Co. v. Evans,* 87 Ga. 673, 676 (13 SE 580). The prime contractor here sought to recoup various amounts represented in invoices sent to the plaintiff. Evidence as to the precise time when this defendant mailed the dated invoices would not serve to illustrate any issue in this case. The court therefore did not err in excluding the testimony of one of defendants' witnesses that it was the prevailing practice of the company to mail such invoices on the same date as stated in the invoices.

■ Defendants introduced into evidence the deposition testimony of the architect who supervised construction as an associate of the corporation designated as "Architect" for the project. This witness expressed various opinions as to the meaning of the drawings and specifications. Defendants contend that in view of the stipulation of the subcontract providing that the architect's "decisions as to the true construction and meaning of the drawings and specifications shall be final," the court erred in charging the jury that the opinion testimony of an expert witness is not conclusive. This argument is without merit.

Opinions of the architect expressed as a witness in the trial of a suit on the subcontract were not "decisions" of the architect within the meaning of the stipulation referred to. See Boteler v. Roy, 40 Mo. App. 234, 240.

■ The eighth enumeration, which complains of the failure of the court to give a requested charge, is without merit since the matter requested was substantially covered in the instructions given. *Carnes v. State,* 115 Ga. App. 387 (6) (154 SE2d 781).

■ The judgment of the trial court was not erroneous for any reasons enumerated and argued in this court.

*Judgment affirmed. Jordan and Pannell, JJ., concur.*