**UNITED STATES of America, Appellant,**

v.

**James S. VARNER et al., Appellees.**

**James S. VARNER and Mrs. Virginia M. Varner, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 24983.**

United States Court of Appeals Fifth Circuit.

Sept. 13, 1968.

Morton Hollander, William Kanter, Howard J. Kashner, Attys., Dept. of Justice, Washington, D. C., W. Sidney Fuller, Andalusia, Ala., Beverly B. Bates, Asst. U. S. Atty., Atlanta, Ga., for the United States.

Frank J. Tipler, Jr., Andalusia, Ala., Hugh G. Head, Jr., Atlanta, Ga., for James S. Varner and another.

Charles M. Goetz, Jr., Atlanta, Ga., for Andy Electric Co.

Before GEWIN and THORNBERRY, Circuit Judges, and EDENFIELD, District Judge.

THORNBERRY, Circuit Judge:

James S. Varner and his wife instituted this suit under the Federal Tort Claims Act, 28 U.S.C. § 1346, against the Government for personal injuries sustained by Mr. Varner while working at Dobbins Air Force Base. Andy Electric Company, Varner's employer, had entered into a contract with the Government to remove some of the old electric poles on the base, replace them with new poles, and transfer the wiring from the old to the new poles. One of the conditions of this contract was that all of the work was to be performed while the lines were deenergized (cold-line contract). Grover Buchanan, the Government's general supervisor for electrical contractors at Dobbins, was to accomplish his deenergization by opening the air-break switch on Pole # 184.

After Varner and Hicks, the Company foreman, ascertained that the area had been deenergized, Hicks climbed a pole and cut the middle line. Each line is equipped with "jumpers" that enable the lines to be cut off pole-by-pole, thus reducing the danger of feedback. Hicks did not cut the jumpers on the remaining lines on the pole. After cutting one line, Hicks accompanied Varner up the next pole and began transferring the lines. Meanwhile, in order that the mess hall would not be without service, Grover Buchanan was engaged in installing a temporary service line. A line disconnect was made to prevent feedback to the main line. After this temporary line was finished, Grover decided to activate the main line by closing the air-break switch. He sent Oley Buchanan, a Government lineman, to ask Hicks if he "could make the line hot." Hicks said, "No." Several minutes later, Oley returned to see if he could then make the line hot, but Hicks again said "No." Oley then said, "Well, we're going to turn on the line to the mess hall." Hicks answered, "OK, but make darn sure this one's not hot." Oley then returned to his brother Grover, who was standing by the air-break switch from which point he could plainly see Varner and Hicks still on the pole, and said "make it hot." Grover then threw the switch and activated the entire line, sending 7200 volts of electricity through Varner.

The district court, sitting without a jury, found that the sole and proximate cause of Varner's injuries was the negligent closing of the air-break switch by Grover Buchanan. The court awarded Varner $96,710 for his personal injuries and his wife $25,000 for loss of consortium. The district court also found that Andy Electric was not negligent and denied the United States' third-party claim. The United States appeals from the denial of its third-party action and from the award of interest from the date of the judgment. Varner has cross-appealed, claiming that the damages are inadequate.

I.

The Government first contends that it is entitled to indemnity from Andy Electric Company, Varner's employer, on the ground that the failure of the Company's foreman Hicks to disconnect all the jumpers on the pole constituted negligent failure to take proper precautions to protect the workers.[1] The district court rejected this claim, reasoning that it was unnecessary for Hicks

1. The contract between Andy Electric Company and the Government provided that Andy Electric Company would be liable to the Government for all damages to persons or property that result from Andy's negligence.

to disconnect all the jumpers because under the contract the Government was to deenergize the whole area. The Government maintains, however, that Hicks should have guarded against the risk that the Government's agents would fail to deenergize the area, and further that although the likelihood of injury was remote, the degree of danger involved was great enough that Hicks' failure to cut all the jumpers was negligent. We are unable to conclude, however, that the district court's holding that Hicks acted free of negligence, in light of the cold-line provisions of the contract, was clearly erroneous. Accordingly, this portion of the judgment is affirmed.

Secondly, the Government contends that the district judge erred in awarding interest of four percent from the date of judgment. The Government bases its argument on 31 U.S.C. § 724a which provides that when a final judgment not in excess of $100,000 *in any one case* is taken against the United States interest shall be paid only when the judgment becomes final on appeal and then only from the date of the filing of the transcript in the General Accounting Office to the date of the mandate of affirmance. The judgment in this case awarded James Varner $96,710 for his personal injuries and awarded Mrs. Varner $25,000 for loss of consortium. Each award is less than $100,000 but the total award exceeds $100,000. Thus the question is whether 31 U.S.C. § 724a applies to total judgments not in excess of $100,000 or to individual judgments not in excess of $100,000.

■ The legislative history is unclear with regard to the meaning of "one case" in 31 U.S.C. § 724a, although the primary purpose in establishing this permanent appropriation was to provide for the prompt payment of judgments and thereby to eliminate or reduce the costs of interest. See Chicago, Rock Island & Pacific R. R. Co. v. United States, S.D. Iowa 1962, 206 F.Supp. 795; H.R.Rep. No. 2638, 84th Cong., 2d Sess. 72 (1957). In United States v. State of Maryland for Use of Meyer, 1965, 121 U.S.App.D.C.

258, 349 F.2d 693, the court held that "one case" within 31 U.S.C. § 724a means "one claimant," so that each individual party can obtain prompt payment of his claim if it does not exceed $100,000, and thus is only entitled to interest from the date of the filing of the transcript. The court reasoned that each claimant has a severable and specific award in the final judgment, and therefore each award should be considered a judgment "in any one case." The Comptroller General reached the same conclusion. See 40 Comp.Gen. 307, 309 (1960).

■ The inaccuracy of the interest provision was raised by the Government for the first time on oral argument before this Court. This may have contributed to the Varners' failure to file their transcript of the trial court's judgment in the General Accounting Office and thus from earning legal interest from that date until the mandate of affirmance. However, in a case also involving 31 U.S.C. § 724a, this Court said, as if speaking to the oversight of Government counsel in the instant case,

> since both the time from which interest can run and the rate of interest are fixed by statute, we do not consider it appropriate to change either of these provisions by a species of estoppel.

United States v. Culp, 5th Cir. 1965, 346 F.2d 35, 37. See also United States v. Jacobs, 5th Cir. 1962, 308 F.2d 906. Being unable to hold that the Government is estopped from raising this matter on appeal and finding that the meaning of the statute in this kind of case has been clearly interpreted, we hold that the court erred in awarding interest from the date of the judgments in favor of James Varner and his wife since each judgment was for less than $100,000 and thus was governed by 31 U.S.C. § 724a.

II.

■ The Varners attack the adequacy of damages awarded by the district judge. James Varner contends that the figure of $96,710 does not contain an award for loss of future earnings since the district judge awarded compensation

for "diminution in earning capacity." Under Georgia law a judge may properly award compensation for diminution of one's capacity to work and labor and for diminution of one's capacity to earn money. The standard for diminution of capacity to work and labor is the enlightened conscience of the jury and is a part of the award for pain and suffering. The amount awarded for diminution in capacity to earn money, however, is a specific sum computed with regard to earnings before and after the injury and probability of earnings in the future reduced to present cash value. See Wright v. Lail, 219 Ga. 607, 135 S.E.2d 418 (1964); Jones v. Hutchins, 101 Ga.App. 141, 113 S.Ed.2d 475 (1960).

 In the instant case, the district judge awarded Varner damages for a) pain and suffering, b) lost earnings in the past, and c) diminution in earning capacity. The award for pain and suffering subsumes the element of diminution in capacity to work and labor, and under Georgia law "diminution in earning capacity" is synonymous with "loss of future earnings." Jones v. Hutchins, supra, 113 S.E.2d at 479; Western & Atlantic Railroad v. Hart, 95 Ga.App. 810, 99 S.E.2d 302, 309 (1957). Thus, the district court's award to Mr. Varner included all relevant elements of damages. Moreover, Wright v. Lail and Jones v. Hutchins indicate that the court or jury may consider the chance of future earning capacity. This is what the trial judge did in this case: He noted that Varner was only 60% disabled; that he had not sought any rehabilitation; that he would be able to do other forms of work; that his discomfort would decrease with time; that he was getting social security; and that he was intelligent. All these findings indicate that while the judge considered this injury tragic and severe, he also considered Varner capable of obtaining future employment and being a useful person. The decisions support this approach of considering the prospects for some future employment, Long v. United States, W.D.S.C. 1965, 241 F.Supp. 286; Christopher v. United States, E.D.Pa. 1965, 237 F.Supp. 787; Thinna v. United States, E.D.S.C. 1964, 234 F.Supp. 588, and make the findings of Mr. Varner's damages not so inadequate as to be clearly erroneous.

 Mrs. Varner challenges the $25,000 awarded her for loss of consortium. It is urged that this amount does not meet the minimum wage law requirement and is erroneous since only 20 years are covered while Mrs. Varner has a life expectancy of 35 years. The judge apparently limited the recovery to the next 20 years since he believed that the conditions disrupting their marriage would diminish with time and that although Mrs. Varner would always have to wait on her husband, this service would also decrease with time. Since there is no "monetary yardstick" for determining the value of such loss, and the judge simply has to base the damages on his "observations, experience, and knowledge," Redding v. United States, W.D. Ark. 1961, 196 F.Supp. 871, 888, the Court should not overturn the damages awarded here. The conclusion that the loss of services will decrease with time has an evidentiary basis, rendering it not clearly erroneous.

Affirmed in part; reversed in part.