DIETZ, Respondent, vs. GOODMAN and another, Appellants.

*January 11—February 7, 1950.*

The cause was submitted for the appellants on the brief of *O'Leary & Joyce* of Neenah, and for the respondent on the brief of *Velte & Molzow* of Neenah.

FAIRCHILD, J. Damages suffered by reason of a negligent act of another must be the direct and proximate result of the act complained of. The pecuniary circumstances of the plaintiff, the fact that his home is incumbered with a mortgage are not material in determining the amount of damages resulting to him from the accident. Appellant insists that the bringing of such facts to the attention of the jury in this case constituted prejudicial error.

The trial court in ruling on motions after verdict said, "A check on the reporter's minutes of the testimony discloses that the plaintiff was not asked by his counsel whether there was an existing mortgage on plaintiff's home at the time of his injury. The plaintiff rather volunteered in answer to another question to state that he was worried about the mortgage on his home. Defendant's counsel promptly objected to that statement and the court thereupon promptly ruled that it was improper to inquire into the financial condition of the plaintiff." However, an examination of the record discloses that, in his opening statement to the jury, counsel for plaintiff asked what was going to happen to the mortgage on plaintiff's house and what was going to happen to his wife. There was timely objection, and the following occurred:

"By the Court: How is that proper, Mr. Velte, in an opening statement?
"By Mr. Velte: I will have some authority on that at the proper time.
"By the Court: Very well, proceed."

When the incident occurred to which the trial court referred in his opinion, the record is:

"*Q.* Well, what are you worrying about? *A.* Well, they told me I wouldn't be able to do that work again at the library.

With the loss of the job I realized at my age I couldn't go and get work again as easily as in my younger days. I had a mortgage on my home.

"By Mr. Joyce: Now if the court please, I don't think that is material whether this man is a millionaire or if he has $50,000 in the bank. I don't think that has any materiality.

"By the Court: Well, sense of worry is a proper item is it not, Mr. Joyce?

"By Mr. Joyce: I don't believe so.

"By the Court: Worry, humiliation, and things of that kind as a natural and probable result of it. Of course it is a jury question what its value is.

"Mr. Velte: If it please the court, counsel is right as a general rule. My question is limited only as it affected his mental condition of worrying. It is only the effect upon his worrying and that makes it competent in that respect.

"By the Court: Well, I don't think you can go into all the details of what his worrying is about. I don't think you can go that far.

"By Mr. Velte: Well, I think you could.

"By the Court: I don't think so. I think you are going too far afield Mr. Velte. The objection to that last question relating to the mortgage—for the time being I will sustain the objection. I will go through it during the noon hour. If I am in error I will so inform you."

We find no further direct reference to this matter in the record and, here, the court struck out only the statement about the mortgage. This left with the apparent approval of the court the statement, "With the loss of the job I realized at my age I couldn't go and get work again as easily as in my younger days." This, together with matters hereinafter referred to, necessarily brought into the case prejudicial error which, under the circumstances, requires a reversal. While evidence which tends to show a reduced capacity to earn caused by the plaintiff's physical disability resulting from the injury is proper, still the diminution in his powers must be due to the negligent act. That diminution is to be ascertained as reasonably as humanly possible, and, when ascertained, that is the amount to be allowed and fixed accordingly.

The quantum of damages to be allowed in a tort case is a matter within the province of the jury. This is especially true of personal injuries where the law does not fix a precise rule of damages. 6 Thompson, Negligence (1905 ed.), p. 351, sec. 7348. It is important, therefore, in the interest of justice to both parties that the attention of the jury be centered on the elements that may constitute and measure the damages to one resulting from the lack of ordinary care on the part of the other.

We may assume that the plaintiff did suffer some impairment of his earning capacity. The amount of that impairment must be the basis for his damages for loss of earnings. Proof was put in at the trial of the fact that he had lost his job because another man had been hired to take his place. Plaintiff also put a man from the employment service on the witness stand and asked him a number of hypothetical questions regarding plaintiff's opportunity to secure a new job at his age. The witness was not allowed to answer because the court ruled that evidence of what he styled "economic conditions" was not admissible. However, the inference that plaintiff would have an extremely hard time finding new employment was conveyed to the jury. The fact that plaintiff had lost his job and might not get another is not a measure of his damages. The amount of damages to which the plaintiff was entitled was the difference, due to the injury, between his earning capacity before the injury and his earning capacity after the injury. Restatement, 4 Torts, p. 631, sec. 924, Comment on clause (b).

The trial court in sustaining the jury finding of $6,000 commented that it would require $3,100 to compensate plaintiff for the wages he had lost at his job up to the time of trial and that the remaining $2,900 would only have been earnings for fifteen months. This amount as damages would be reasonable and allowable only if the plaintiff had suffered one hundred per cent disability during that period. An examina-

tion of the record shows that his incapacity was largely in his description of subjective symptoms. His physician, Dr. Pitz, testified that he was in good shape physically for a man his age although, relying on his statements, Pitz thought he probably suffered some permanent disability from his feeling of unbalance and lack of confidence in his right leg. Dr. Pitz could not testify as to the exact effect the accident had on plaintiff's condition because he had never examined him completely before. Dr. Canavan, who examined the plaintiff at the time of the accident and again about six months later, testified that the healing was completed about two or three months after the accident. He was of the opinion that the three-and-a-half by one-and-a-half inch area on plaintiff's leg, which was giving him trouble, was not the result of the accident because it would not have lasted for such a length of time. This evidence tends to show that plaintiff was not totally incapacitated.

The learned trial judge did charge:

"You will insert as your answer to this question such sum of money in dollars as the evidence satisfies you to a reasonable certainty the plaintiff has lost in earnings up to the present time by reason of his incapacity or diminished capacity to continue either in his former occupation, or by reason of his incapacity or diminished capacity due to his injuries received to do any other gainful work; and if you are satisfied to a reasonable certainty from the credible evidence in the case that such inability to perform gainful work, or his diminished capacity to perform gainful work will result in future loss of earnings to the plaintiff, you may make reasonable allowance therefor in your verdict."

But even with this, it is impossible to disassociate the effect of the prejudicial and erroneous references from the result.

The jury allowed $2,250 for personal injuries. This amount included compensation for physical pain and suffering and mental worry. The evidence discloses that plaintiff's mental worry was caused by his inability to secure employ-

ment because of his age and should not have been included in the basis for fixing damages.

Because of the result we have reached, it is not necessary to consider defendants' other contentions on appeal.

*By the Court.*—Judgment reversed. Cause remanded with directions to grant a new trial.