NAWROCKI v HAWKEYE SECURITY INSURANCE COMPANY

Docket No. 77–949. Submitted November 1, 1977, at Grand Rapids.— Decided May 8, 1978. Leave to appeal applied for.

Joseph G. Nawrocki was disabled in an automobile accident and began receiving medical expense and wage loss benefits from Hawkeye Security Insurance Company under his no-fault automobile coverage. Later, a physician advised both parties that Nawrocki could resume full and normal activity but during Nawrocki's disability his employer had hired another employee to fill his job and Nawrocki could find no other work. He sought a continuation of work loss benefits from Hawkeye but was refused. Nawrocki commenced an action in district court, Woodrow A. Yared, J., seeking benefits. Summary judgment for defendant. Plaintiff appealed to Kent Circuit Court, R. Stuart Hoffius, J. Summary judgment affirmed. Plaintiff appeals by leave granted. The sole issue on appeal is whether an insured is entitled to no-fault benefits for work lost because of a disabling injury where the disability has terminated and he can find no further employment. *Held:*

Plaintiff is entitled to no-fault benefits from Hawkeye for work lost because of his automobile injury where disability had terminated, his employer had hired another to take his place and he was unable to find other employment because the no-fault statute requires only that work be lost as a direct consequence of an injury.

Reversed.

1. APPEAL AND ERROR—JUDGMENT—SUMMARY JUDGMENT—PLEADINGS —COMPLAINTS—COURT RULES.

Appeals from orders granting summary judgments to defendants require the Court of Appeals to accept every well-pled allegation in a complaint as true (GCR 1963, 117.2[1]).

REFERENCES FOR POINTS IN HEADNOTES
[1] 4 Am Jur 2d, Appeal and Error §§ 104, 853.
    73 Am Jur 2d, Summary Judgment § 35.
[2] 22 Am Jur 2d, Damages §§ 86, 89.
[3] Am Jur 2d, New Topic Service, No-Fault Insurance §§ 22, 29.

2. DAMAGES—CAPACITY TO EARN—LOST WAGES—SEPARATE DAMAGES
    —RECOVERY OF DAMAGES.

   Loss of capacity to earn is a category separate from actual loss of
   earnings; in a tort action either or both of these types of
   damages may be recovered.

3. INSURANCE—NO-FAULT INSURANCE—TERMINATION OF DISABILITY—
    LOST WAGES—CONTINUATION OF BENEFITS—CONSEQUENCE OF
    INJURY—STATUTES.

   A plaintiff is entitled to no-fault benefits from his insurance
   carrier for work lost because of a disabling injury in an
   automobile accident where the disability had terminated and
   plaintiff's employer had hired another to take his place and the
   defendant could find no other work because the no-fault statute
   requires no more than that the work be lost as a direct
   consequence of the injury (MCL 500.3107, 500.3107a; MSA
   24.13107, 24.13107[1]).

*Dilley & Dilley,* for plaintiff.

*Linsey, Strain & Worsfold, P. C.,* for defendant.

Before: R. M. MAHER, P. J., and M. F. CAVANAGH
and N. J. KAUFMAN, JJ.

M. F. CAVANAGH, J. Plaintiff insured appeals by
leave from a circuit court judgment affirming a
district court order granting summary judgment
for defendant insurer. GCR 1963, 117.2(1). For
purposes of this appeal we must accept every well-
pled allegation in the complaint as true. *Bielski v
Wolverine Insurance Co,* 379 Mich 280, 283; 150
NW2d 788, 789 (1967). Those allegations present
the following case.

Plaintiff was disabled by an automobile accident
in September, 1974, and began receiving medical
expense and wage loss benefits from defendant. In
June, 1976, plaintiff's physician advised plaintiff
and defendant that plaintiff could resume full and
normal activity. However, during plaintiff's dis-

ability his employer had hired another to fill his job, and plaintiff could find no other work.

Plaintiff sought a continuation of work loss benefits from defendant, but they were refused. Suit in district court resulted in summary judgment for defendant. An appeal to circuit court came to the same end. We granted leave.

The sole issue before us is whether an insured is entitled to no-fault benefits for work lost because of a disabling injury, where the disability has terminated.

The controlling statute is § 3107 of the no-fault act. It reads, in pertinent part, as follows:

"Sec. 3107. Personal protection insurance benefits are payable for the following:

* * *

"(b) Work loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he had not been injured * * * . Because the benefits received from personal protection insurance for loss of income are not taxable income, the benefits payable for such loss of income shall be reduced 15% unless the claimant presents to the insurer in support of his claim reasonable proof of a lower value of the income tax advantage in his case, in which case the lower value shall apply. The benefits payable for work loss sustained in a single 30-day period and the income earned by an injured person for work during the same period together shall not exceed $1,000.00, which maximum shall apply pro rata to any lesser period of work loss." MCL 500.3107; MSA 24.13107.

It is defendant's position that we should construe this statute as limiting the right to recover benefits to the period of the insured's disability.

In support of this position defendant cites Michigan cases holding that the proper measure of

damages in suits for personal injury is loss of earning capacity. See *Prince v Lott,* 369 Mich 606, 610; 120 NW2d 780, 782 (1963), *Harris v Wiener,* 362 Mich 656, 659; 107 NW2d 789, 791 (1961), *Lorenz v Sowle,* 360 Mich 550; 104 NW2d 347 (1960). Defendant concedes that it has found no Michigan case holding that damages for loss of earning capacity are *exclusive* of damages for lost work. However, defendant cites a Wisconsin case as so holding. See *Dietz v Goodman,* 256 Wis 370; 41 NW2d 208 (1950).

In *Dietz* the Wisconsin Supreme Court reversed a judgment for plaintiff on a jury verdict in a personal injury action. The court agreed with the defendant that a number of prejudicial and imma-terial facts had been improperly presented to the jury as evidence of plaintiff's damages. Among them was plaintiff's difficulty in finding a job to replace that lost during his disability. The court stated that this was not a measure of plaintiff's damages.[1]

There is some difficulty with applying the *Dietz* decision to the issue at bar. Defendant urges us to construe the no-fault act to be in conformity with the common-law rule, citing *Dietz* as indicating

---

[1] "We may assume that the plaintiff did suffer some impairment of his earning capacity. The amount of that impairment must be the basis for his damages for loss of earnings. Proof was put in at the trial of the fact that he had lost his job because another man had been hired to take his place. Plaintiff also put a man from the employment service on the witness stand and asked him a number of hypothetical questions regarding plaintiff's opportunity to secure a new job at his age. The witness was not allowed to answer because the court ruled that evidence of what he styled 'economic conditions' was not admissible. However, the inference that plaintiff would have an extremely hard time finding new employment was conveyed to the jury. The fact that plaintiff had lost his job and might not get another is not a measure of his damage. The amount of damage to which the plaintiff was entitled was the difference, due to the injury, between his earning capacity before the injury and his earning capacity after the injury." 256 Wis at 374; 41 NW2d at 210.

what that rule is. However, the only authority cited by *Dietz* was the Restatement Torts, § 924, comment, clause (b),[2] and neither the Restatement itself, nor the cited comment, clearly support the rule that physical impairment of earning capacity is the exclusive measure of damages. On the contrary, the comment to § 924(b) seems to contemplate an inquiry into whether there are employment opportunities available to the plaintiff. If not, then the comment indicates that the plaintiff is entitled to damages for earnings lost because of the harm. A continuing physical disability is not made an express condition of recovery.

The persuasive authority of *Dietz* is further undermined by other foreign authority recognizing that lost wages are an item of damages distinct from lost earning capacity, and that, in a proper case, the plaintiff may recover for both. *Baxter v Baker,* 253 Or 376; 451 P2d 456 (1969), *reh den,* 253 Or 376; 454 P2d 855 (1969).[3]

---

[2] "§ 924. Harm to the Person

"A person whose interests of personality have been tortiously invaded is entitled to recover damages for past or prospective

\*  \*  \*

"(b) loss of earning capacity or earnings;

\*  \*  \*

"*Comment on Clause* (b):

"c. *Loss of earning capacity to the time of trial.* A person physically harmed by the tort of another is entitled to receive as damages the amount of earnings which he has been prevented from acquiring up to the time of the trial. This amount is the difference between what he probably could have earned but for the harm and any less sum which he actually earned in any employment or, if he failed to avail himself of opportunities, the amount which he probably could have earned in work for which he was fitted, up to the time of trial. This difference represents the harm to his earning capacity." Restatement Torts, § 924, p 631, and comment on § 924(b), pp 632-633.

[3] "For convenience, the courts of this state have followed the practice of instructing that impaired earning capacity is compensable as 'general damages.' Lost wages can be covered in an instruction on 'special damages' computed for the period from the date of injury to the date of the trial, but only if the plaintiff proves that he was

There is other reason to question defendant's reading of the common-law rule in Michigan regarding recovery of damages for lost wages.

The case law in this state is quite clear that loss of earning capacity is a category of harm separate from loss of wages, and that sustaining the second is not a prerequisite for recovery of damages for the first. Indeed, our courts have declared that the plaintiff may recover damages for loss of earning capacity even though actual earnings increased. *Lorenz v Sowle,* 360 Mich 550, 554; 104 NW2d 347, 348–349 (1960), *Gonzalez v Hoffman,* 9 Mich App 522, 527; 157 NW2d 475, 478 (1968), *lv granted,* but dismissed on defendant's motion, 381 Mich 805 (1969).

The relationship between the two kinds of damages in the typical tort suit was succinctly explained in Justice T. E. BRENNAN's opinion in *Rohm v Stroud,* 386 Mich 693, 696; 194 NW2d 307, 309 (1972):

"In tort cases generally, an injured party is entitled to recover for loss of earning capacity. In such cases, it is customary to prove actual lost wages.

"Actual lost wages are not the true or total measure of damages, but actual earnings are conclusive upon the question of the minimum earning capacity."

Moreover, as was explained in *Lorenz, supra,* the rule permitting recovery of damages for loss of earning capacity functions to expand rather than reduce a plaintiff's recovery. See also *Harris v Wiener,* 362 Mich 656, 659; 107 NW2d 789 (1961).

employed at a fixed wage at the time of injury. * * * Whether or not a plaintiff was employed at the time of his injury, the jury is told that impaired earning capacity from the date of the trial on into the future is to be included within those losses compensable as 'general damages.' " 253 Or at 378; 451 P2d at 457. (Citations omitted.)

If this benevolent effect was intended, as we presume it was, then defendant's proposed extrapolation of the rule would run counter to its purpose.

To summarize, the Michigan law regarding damages for loss of earnings exhibits a policy favoring plaintiffs' recovery of the maximum quantifiable loss, a recognition that loss of capacity to earn is a category separate from actual loss of earnings, and a rule that sustaining both kinds of damage is not a prerequisite to recovery of one. We see no basis here for concluding that the common-law rule in Michigan is that plaintiffs may not recover damages for wages lost after termination of a disability but as its consequence.

However, whatever the common-law rule regarding tort damages in Michigan, the problem we face here is construction of a statute providing for first-party insurance benefits. Even if the rule regarding damages is as contended by defendant, it appears to us, for the following reasons, that the Legislature chose not to incorporate that rule in the no-fault act.

First, we note that the cases which discuss earning capacity damages stress repeatedly that plaintiff's right is to recover not what he would have earned but what he *could* have earned. *Prince v Lott, supra,* 369 Mich at 610; 120 NW2d at 782, *Lorenz v Sowle, supra,* 360 Mich at 555; 104 NW2d at 349–350, *Coger v Mackinaw Products Co,* 48 Mich App 113, 125; 210 NW2d 124, 130 (1973). This contrasts sharply with the language of the statute before us: "benefits are payable for * * * loss of income from work an injured person *would* have performed * * * ." Giving this language the plain meaning which we must,[4] it seems evident to

---

[4] *Chrysler Corp v Washington,* 52 Mich App 229, 234; 217 NW2d 66, 68 (1974), *lv den,* 399 Mich 859 (1977).

us that the statute is not an enactment of the common-law rule.

This inference is strengthened by the statute's provision for deduction, from the maximum payable benefit, of income earned by the insured during the benefit period. This is clearly inconsistent with the tort damages rule, discussed above, that damages for loss of earning capacity are not reduced by the amount of actual earnings.

Yet another indication that earning capacity is not the measure is provided by the legislative history of § 3107a of the no-fault act. That section provides as follows:

"Sec. 3107a. Subject to the provisions of section 3107(b), work loss for an injured person who is temporarily unemployed at the time of the accident or during the period of disability shall be based on earned income for the last month employed full time preceding the accident." MCL 500.3107a; MSA 24.13107(1).

In the legislative analysis of the bill which became this section, the problem to which the bill was addressed was described in the following language:

"Under the no-fault insurance system enacted in 1972, all owners or registrants of motor vehicles registered in this state are required to maintain no-fault insurance providing for the payment of personal protection benefits. Under section 500.3107(b) of the Michigan Compiled Laws, these benefits are payable for work loss ‚consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he/she had not been injured. However, there is no concise definition of 'loss of income' in the law.

"This has given rise to certain problems in connection with persons who are seasonally employed or temporarily unemployed as a result of lay-offs, and who are

disabled as a result of an auto accident. In the case of a worker who is unemployed at the time of an accident or during the period of disability, the law might be construed as providing for no work loss benefits since the worker would have had no income at that time, had he/she not been injured. In addition, disabled workers are not entitled to unemployment compensation since benefits are not payable to a person who is unable to work. An unemployed worker who is disabled in an auto accident may thus find him/herself without benefits of either sort."[5]

If earning capacity were the compensable loss under § 3107(b), then the problem described in the legislative analysis would not have existed and § 3107a would have been wholly unnecessary. That the Legislature found this statute necessary is a strong indication that § 3107(b) is not merely a deceptively worded enactment of the earning capacity damages rule. That the Legislature found no concise definition of "work loss" must mean either that they overlooked the numerous cases on earning capacity, or that "work loss" means something else, presumably what § 3107(b) says it means: "loss of income from work an injured person would have performed * * * if he had not been injured * * * ."

The Michigan no-fault act was based upon the uniform motor vehicle accident reparations act, 13 ULA 349, *et seq.* "Work loss" is defined in § 1(a)(5)(ii) of that act,[6] and the commissioners' comment on this definition leaves no doubt that

[5] Analysis, H. B. 4221, 21 November 1975.

[6] " 'Work loss' means loss of income from work the injured person would have performed if he had not been injured, and expenses reasonably incurred by him in obtaining services in lieu of those he would have performed for income, reduced by any income from substitute work actually performed by him or by income he would have earned in available appropriate substitute work he was capable of performing but unreasonably failed to undertake." UMVARA, § 1(a)(5)(ii).

work loss as used in that act does not mean loss of earning capacity:

" 'Work loss,' as are the other components of loss, is restricted to accrued loss, and thus covers only actual loss of earnings as contrasted to loss of earning capacity." 13 ULA 362.

The foregoing leaves us convinced that work loss, as used in § 3107(b), is not to be equated with loss of earning capacity. However, we are still without a clear indication of whether income lost because of a disabling injury but subsequent to the disability's termination is within the statutory definition.

Plaintiff points out that the Legislature had the workers' compensation act before it, and, had it chosen to do so, could easily have adopted that act's limitation of benefits to the period of disability. See MCL 418.351; MSA 17.237 (351), MCL 418.361; MSA 17.237(361). The Legislature chose not to so limit its act, and instead created a statute which requires no more than that the work be lost as a direct consequence of the injury. The allegations of plaintiff's complaint satisfied this requirement.

Reversed. No costs.