# STATE OF MICHIGAN

# COURT OF APPEALS

---

FELECIA HENSELY-PANICACCIA,

Plaintiff-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant-Appellee.

UNPUBLISHED
April 21, 2016

No. 325969
Washtenaw Circuit Court
LC No. 13-000274-NF

---

Before: TALBOT, C.J., and HOEKSTRA and SHAPIRO, JJ.

PER CURIAM.

Following a jury trial, in this action for first-party personal protection benefits under the no-fault act, MCL 500.3101, *et seq.*, plaintiff appeals as of right the judgment of no cause of action, which was issued after the jury delivered a verdict awarding plaintiff no damages. Because the trial court's jury instructions fairly presented the issues to be tried and the court did not abuse its discretion by denying plaintiff's requested special instructions, we affirm.

On March 2, 2012, plaintiff was involved in an automobile accident when she drove into the path of another vehicle. Plaintiff's initial injuries consisted of some contusions and abrasions, mostly to her arms and legs, injuries to her wrists, and some pain in her leg. Later, plaintiff reported headaches, forgetfulness, confusion, dizziness, musculoskeletal pains, and fatigue. She received a diagnosis involving a traumatic brain injury, and she underwent treatment for cognitive deficits, including cognitive retraining at "Brain-Trainers." Although plaintiff briefly returned to her position as the manager of a clothing store called "Avenue," she eventually lost this job. Since losing her job at Avenue, plaintiff had been offered "many" full-time jobs for which she qualified, but she was "hesitant" to accept the positions because she did not think she could handle a full-time position yet. Despite plaintiff's concerns, there was medical testimony that, while plaintiff might face some ongoing lifting and climbing restrictions, she could handle a 40 to 50 hour a week job.

Notably, before the 2012 accident, plaintiff had been in two prior automobile accidents resulting in injuries. The first was in 1989 and the second was in 2002. Following these accidents, plaintiff suffered numerous ailments, including a closed head injury, neck pain, back pain, knee problems, depression and anxiety, fibromyalgia, migraines, fatigue, problems sleeping, difficulty concentrating, etc. At various times during the course of almost two decades,

-1-

plaintiff underwent numerous treatments for her various injuries and symptoms. Regarding the relationship between these injuries and the 2012 accident, plaintiff claimed that the 2012 accident exacerbated her pre-existing injuries arising from the 1989 and 2002 accidents.

At the time of the 2012 accident, defendant was plaintiff's no-fault insurer and, as a result of the 2012 accident, defendant paid over $25,000 in no-fault insurance benefits to plaintiff, including payment of some medical bills and work-loss benefits. However, defendant took the position that plaintiff's injuries arising from the 2012 accident were limited to those relating to her arms and legs, and thus defendant ceased payment of benefits when plaintiff stopped receiving treatment for her wrists and legs. In contrast, defendant concluded that plaintiff had not sustained a traumatic brain injury or an aggravation of her earlier conditions as a result of the 2012 accident, and thus defendant denied many of plaintiff's claims for cognitive treatment, including most of her treatment at Brain-Trainers. In this regard, two medical doctors who examined plaintiff determined that she showed no decline in cognitive functioning following the 2012 accident that would suggest a traumatic brain injury, and plaintiff's medical records suggested that she had been receiving treatment for the same ailments for numerous years since the 1989 and 2002 accidents. After defendant stopped paying her claims, plaintiff filed the present first-party lawsuit against defendant seeking no-fault insurance benefits, including medical expenses, replacement services, and wage loss benefits.

Relevant to the present appeal, at trial, plaintiff's attorney requested two special jury instructions, the first relating to causation and the second relating to work-loss benefits. The trial court denied plaintiff's requests, concluding that the standard jury instruction on causation was "sufficient" and that plaintiff's proposed instruction on work loss was "more duplicative than necessary." Ultimately, the court read the standard no-fault jury instructions. In relevant part, the trial court stated:

> In order for the plaintiff to recover no-fault benefits from the defendant the plaintiff has the burden of proof on each of the following: A, that at the time of the accident there existed a valid contract of no-fault insurance between [plaintiff] and the defendant. B, that plaintiff's injuries arose out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle. C, that the plaintiff incurred allowable expenses which consist of reasonable charges for reasonably necessary products, services, and accommodations for the plaintiff's care, recovery, or rehabilitation. D, that plaintiff suffered a work loss which consists of a loss of income from work the plaintiff would have performed during the first three years after the accident had she not been injured. E, that plaintiff reasonably incurred replacement service expenses . . . .

> To the extent that plaintiff has met or has not met her burden of proof, you may grant, diminish, or deny the claimed benefits according to the methods of computation which I will next describe.

> *  *  *

> If you decide no-fault benefits are owed to the plaintiff[], you are instructed to award benefits that have not already been paid by the defendant as

follows: A, allowable expenses consisting of all reasonable charges incurred for reasonably necessary product, services, and accommodations for the plaintiff's care, recovery, or rehabilitation arising out of the accident in question. B, work loss benefits consisting of 85 percent of the loss of income from work that the plaintiff would have performed during the first three years after the date of the accident if she had not been injured. . . . And, C, replacement service expenses not exceeding $20 per day . . . .

Following deliberations, the jury found that plaintiff sustained an accidental bodily injury that arose out of the ownership, operation, maintenance, or use of a motor vehicle on March 2, 2012 and that plaintiff incurred allowable expenses arising out of this accidental bodily injury. However, the jury determined that the amount of allowable expenses owed to plaintiff by defendant was zero dollars. Similarly, the jury concluded that plaintiff sustained work loss arising out of her accidental bodily injury, but that the amount of work loss benefits owed to plaintiff by defendant was zero dollars. Finally, the jury determined that replacement expenses were incurred by or on behalf of plaintiff, but that the amount of replacement services owed to plaintiff was zero dollars.

Given the jury's verdict, the trial court entered a judgment of no cause of action in favor of defendant. Plaintiff then moved for a new trial and for judgment notwithstanding the verdict, arguing that the trial court erred by failing to give plaintiff's requested special jury instructions on causation and wage loss damages. The trial court denied plaintiff's motions. Plaintiff now appeals as of right.

On appeal, plaintiff again argues that the trial court should have read her requested special instructions on causation and wage loss. According to plaintiff, her causation instruction was an accurate statement of the law and necessary for the jury's assessment of her assertion that her pre-existing injuries were aggravated by the 2012 accident. Likewise, plaintiff maintains that her wage-loss instruction accurately stated the law and should have been read to the jury.

We review claims of instructional error de novo. *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). "The instructions should include all the elements of the plaintiff's claims and should not omit material issues, defenses, or theories if the evidence supports them." *Id.* See also MCR 2.512(B)(2). In particular, when requested, a standard jury instruction must be given if it is applicable and accurately states the law. MCR 2.512(D)(2); *Chastain v Gen Motors Corp (On Remand)*, 254 Mich App 576, 590; 657 NW2d 804 (2002). The parties may also request supplemental instructions on matters not covered by the model instructions. MCR 2.512(A)(1); MCR 2.512(D)(4). Whether a supplemental instruction is applicable and accurate is within the trial court's discretion, *Silberstein v Pro-Golf of Am, Inc*, 278 Mich App 446, 451; 750 NW2d 615 (2008), and it will be reviewed on appeal for an abuse of discretion, *Chastain*, 254 Mich App at 590.

Specifically, "[w]hen the standard jury instructions do not adequately cover an area, the trial court is obligated to give additional instructions when requested, if the supplemental instructions properly inform the jury of the applicable law and are supported by the evidence." *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 401-402; 628 NW2d 86 (2001). "Additional instructions, when given, must be patterned as nearly as practicable after the style of

the model instructions and must be concise, understandable, conversational, unslanted, and nonargumentative." MCR 2.512(D)(4). "Supplemental instructions need not be given if they would add nothing to an otherwise balanced and fair jury charge nor enhance the ability of the jury to decide the case intelligently, fairly, and impartially." *Central Cartage Co v Fewless*, 232 Mich App 517, 528; 591 NW2d 422 (1998).

When deciding whether a claim of instructional error entitles a party to relief on appeal, jury instructions are examined "as a whole," rather than piecemeal, "to determine whether there is error requiring reversal." *Case*, 463 Mich at 6. "Even if somewhat imperfect, instructions do not create error requiring reversal if, on balance, the theories of the parties and the applicable law are adequately and fairly presented to the jury." *Id.* This Court "will only reverse for instructional error where failure to do so would be inconsistent with substantial justice." *Id.* See also MCR 2.613(A).

In this case, plaintiff's proposed special instruction on causation read:

> The arising out of requirement of the No-Fault Act is satisfied when the need for no-fault benefits is causally related to the injuries suffered in the car accident. The arising out of requirement is satisfied by a causal connection between the accident and requested benefits. Allowable expenses are recoverable where the plaintiff's need for treatment is a result of the combination of a pre-existing condition and an injury arising from the accident. Allowable expenses are also recoverable where there has been an aggravation of a pre-existing condition.

Fairly read, this proposed instruction actually contains two components, the first a general statement of what it means to "arise out of" an accident and the second a discussion of an accident's aggravation or interaction with a pre-existing condition.

Regarding the first, plaintiff asked the court to instruct the jury, in part, that:

> The arising out of requirement of the No-Fault Act is satisfied when the need for no-fault benefits is causally related to the injuries suffered in the car accident. The arising out of requirement is satisfied by a causal connection between the accident and requested benefits.

In our judgment this proposed explanation of "arising out of" is incomplete and would have added nothing to the instructions read to the jury. That is, under the no-fault act, "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." MCL 500.3105(1). And, allowable expenses consist "of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). Consistent with the statutory language, the trial court instructed the jury on these requirements, stating that plaintiff must show that "plaintiff's injuries arose out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle" and that "the plaintiff incurred allowable expenses which consist of reasonable charges for reasonably necessary products, services, and accommodations for the plaintiff's care, recovery, or

rehabilitation." This was a fair and adequate explanation of statutory causation requirements as set forth in the no-fault act.

Nonetheless, although the trial court plainly instructed the jury on the law, plaintiff requested a more detailed definition of "arising out of," specifically that the trial court instruct the jury that this requirement is satisfied by a "causal connection" or when the benefits are "casually related" to the accident. But, this is not an accurate or a complete statement of the law. When describing the "arising out of" requirement, our Supreme Court has stated that "[a]n injury arises out of the use of a motor vehicle as a motor vehicle when 'the causal connection between the injury and the use of a motor vehicle as a motor vehicle is *more than incidental, fortuitous, or 'but for.'* " *Boertmann v Cincinnati Ins Co*, 493 Mich 898; 823 NW2d 842 (2012) (emphasis added).[1] To have instructed the jury on a vague "causal connection," without specifying that this connection must be "more than incidental, fortuitous or but for," would have been misleading and it ultimately would not have aided the jury's assessment of the "arising out of" component. Thus, the trial court did not abuse its discretion by denying plaintiff's request.

Aside from this "causal connection" explanation, plaintiff also asked the trial court to instruct the jury on the ability to recover allowable expenses where the accident in question has exacerbated a pre-existing condition. In this respect plaintiff's proposed instruction stated, in part, that:

> Allowable expenses are recoverable where the plaintiff's need for treatment is a result of the combination of a pre-existing condition and an injury arising from the accident. Allowable expenses are also recoverable where there has been an aggravation of a pre-existing condition.

Under the no-fault act, "an injured party may recover if he can demonstrate that the accident aggravated a pre-existing condition." *Mollitor v Associated Truck Lines*, 140 Mich App 431, 438; 364 NW2d 344 (1985). Given this proposition, we see no reason why, generally speaking, a fair instruction on the consideration of a pre-existing condition would not potentially be appropriate as a supplemental instruction, depending on the circumstances involved.[2] However, in this case, as written, the requested instruction formed part of the larger requested instruction on causation, which was seriously flawed for the reasons discussed *supra*, and thus, considered as a whole, the trial court did not abuse its discretion by refusing the instruction.

---

[1] In contrast, plaintiff notes on appeal that, under *Scott v State Farm Mut Auto Ins Co*, 278 Mich App 578, 586; 751 NW2d 51 (2008), "[a]lmost any causal connection will do." However, "[t]he 'almost-any' standard is discredited and inconsistent with current law to the extent it suggests a plaintiff may meet the statutory causation requirement without proving the causal connection was 'more than incidental, fortuitous, or but for.'" *Oostdyk v Auto Owners Ins Co*, 498 Mich 913; 870 NW2d 926 (2015). See also *McPherson v McPherson*, 493 Mich 294, 299; 831 NW2d 219 (2013).

[2] We do not suggest approval of the specific language drafted by plaintiff and submitted to the trial court as a proposed instruction.

Moreover, on the facts of this case, even if the court should have given some instruction on the significance of a pre-existing injury, we conclude that the trial court's failure to give such an instruction does not require reversal. As discussed, consistent with the no-fault statutory language, the trial court fairly and adequately instructed the jury on injuries arising from a motor vehicle accident and the necessity of incurring allowable expenses. See MCL 500.3105(1); MCL 500.3107(1)(a). Nothing in the trial court's instructions suggested that a pre-existing injury precluded no-fault benefits or that the aggravation of a pre-existing injury could not support a claim for no-fault benefits. In addition, this was a well-tried case in which arguments and evidence regarding the possibility of prior injuries having been aggravated by the 2012 accident was comprehensively presented to the jury. Cf. See *Guerrero v Smith*, 280 Mich App 647, 664; 761 NW2d 723 (2008). Medical experts discussed plaintiff's condition pre- and post-accident, offering their opinions about the effects of the 2012 accident. Plaintiff personally testified regarding her prior accidents, her injuries in those accidents, and her symptoms following the 2012 accident. And, plaintiff's attorney argued extensively that her pre-existing conditions were worsened by the 2012 accident. In comparison, defendant never disputed that, if proven, aggravation of a pre-existing injury could give rise to a claim for no-fault benefits.[3] Indeed, defendant's claims adjuster conceded at trial that a pre-existing injury did not exclude coverage under the no-fault act and that it was appropriate to consider whether there was "an aggravation to a prior condition." "Because the parties never disputed the legal principles described in [plaintiff's] requested supplemental jury instructions, the instructions would not have enhanced the jury's ability to intelligently and fairly decide the case." *Alpha Capital Mgt, Inc v Rentenbach*, 287 Mich App 589, 630; 792 NW2d 344 (2010). In other words, given the trial court's instructions in the context of the parties' arguments, "[t]here is simply no indication that the jury misunderstood plaintiff's theories of liability in this case" or "that the jury did not comprehend the applicable legal principles." *Guerrero*, 280 Mich App at 664-665. On this record, the theories of the parties and the applicable law were adequately and fairly presented to the jury, and there is no basis for reversal. See *Case*, 463 Mich at 6.

Finally, regarding wage loss, plaintiff asked the trial court to instruct the jury as follows:

> When an injured no fault claimant loses her job as a direct consequence of the injury sustained in the automobile accident and time missed from work, the injured person may be entitled to wage loss payments until new comparable employment is obtained within her restrictions and limitations.

---

[3] Rather than dispute this basic proposition, it was defendant's position at trial that, comparing plaintiff's pre- and post-accident medical records, she did not establish that she suffered any brain injury in the 2012 accident. For example, during opening statements, defense counsel stated that "[t]he records are going to show you that [plaintiff] has essentially been treating for the exact same symptoms since roughly 1992 with very little alteration, if any." During closing arguments, defense counsel then urged the jury to examine plaintiff's medical records to determine the cause of her purported injuries.

Considering the jury instructions as a whole, we conclude that the trial court's instructions on wage loss adequately and fairly presented the issue to the jury, and plaintiff has not shown error requiring reversal in the court's refusal to give her special instruction.

"Work-loss benefits replace income that a claimant would have earned had he not been injured." *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 472; 521 NW2d 831 (1994). The goal is to place the injured individual "in the same, but no better, position" than she was in before the accident. *Ross v Auto Club Group*, 481 Mich 1, 13; 748 NW2d 552 (2008). In particular, by statute, "personal protection insurance benefits are payable for . . . [w]ork loss consisting of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured." MCL 500.3107(1)(b). Because the benefits received from personal protection insurance for loss of income are not taxable income, the benefits payable for such loss of income are typically reduced by 15 percent. MCL 500.3107(1)(b).

In this case, consistent with the statutory language, the trial court instructed the jury that work loss "consists of a loss of income from work the plaintiff would have performed during the first three years after the accident had she not been injured" and that, if plaintiff was entitled to work loss, the jury should award "work loss benefits consisting of 85 percent of the loss of income from work that the plaintiff would have performed . . . if she had not been injured." The trial court's instruction was a fair and accurate statement of the law on wage loss as set forth in the no-fault act.

Plaintiff's additional instruction is somewhat inaccurate and it ultimately adds nothing to trial court's "otherwise balanced and fair jury charge." *Central Cartage Co*, 232 Mich App at 528. The no-fault act authorizes wage loss benefits to replace income that a claimant would have earned had he not been injured. MCL 500.3107(1)(b); *Popma*, 446 Mich at 472. To be compensable, the wage loss must be a direct consequence of the injury. Plaintiff's instruction is confusing insofar as it does not make clear that the "time missed from work" must itself be a direct result of the injury sustained in the accident.

It is well-settled that wage-loss benefits are not necessarily "restricted to the period of disability if the insured's continued loss of income is attributable to injury incurred in the accident." *Marquis v Hartford Acc & Indem*, 444 Mich 638, 646; 513 NW2d 799 (1994). For instance, a plaintiff fired from employment while disabled, who is then unable to find new employment, may claim wage-loss benefits even after the period of disability has ended. *Nawrocki v Hawkeye Sec Ins Co*, 83 Mich App 135, 136-137, 144; 268 NW2d 317 (1978). Likewise, a plaintiff may potentially receive differential benefits for lost income after accepting another, lower paying, job. See *Marquis*, 444 Mich at 645-646, 655. However, what plaintiff's instruction does not communicate is that a plaintiff seeking wage loss benefits in fact has a responsibility to mitigate damages by seeking other employment. *Id.* at 650-655. Plaintiff's proposed instruction can be read to say that she is entitled to full wage-loss benefits until she obtains "comparable" employment suitable for her restrictions without conveying the points that she has a duty to mitigate her damages and is entitled only to differential benefits if she obtains other employment. In other words, she may only receive continued benefits provided that her continued loss of income is attributable to injury arising from the accident. See *id.* at 646, 655.

Plaintiff's proposed instruction does not adequately convey the law pertaining to the relevance of plaintiff's ability to seek and obtain new employment following her termination from Avenue.

The dispositive inquiry was whether plaintiff experienced a loss of income as a consequence of her accident-related injury, and we fail to see what benefit plaintiff's incomplete instruction would have provided for the jury's understanding of this issue. The jury was accurately informed that plaintiff could receive benefits for "loss of income from work the plaintiff would have performed during the first three years after the accident had she not been injured." This was a fair and adequate statement of the law, and we see no basis for reversal.

Affirmed.

/s/ Michael J. Talbot
/s/ Joel P. Hoekstra
/s/ Douglas B. Shapiro