*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NICHOLE ROLFE,

                Plaintiff-Appellant,

v

BAKER COLLEGE,

                Defendant-Appellee.

UNPUBLISHED
May 7, 2019

No. 340158
Genesee Circuit Court
LC No. 15-104587-CK

Before: BOONSTRA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Plaintiff appeals the consent judgment entered by the trial court to the extent it limited her recoverable damages. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff was enrolled in defendant's nursing program. Approximately six months into her tenure as a student in defendant's program, plaintiff was subjected to discipline from defendant's nursing director. As part of that discipline, plaintiff signed a "behavior contract" that would permit her dismissal from defendant's program if she continued to demonstrate "improper professional behavior." Plaintiff was subsequently discharged from the program for violation of the behavior contract based on conduct that defendant characterized as "[d]isrupting the learning environment . . . by continuously arguing . . . about a personal belief regarding immunizations," "persistent, aggressive, oppositional behavior . . . by student in clinical group setting . . . disrupting the clinical learning environment," and "abrasive and unprofessional" email communications to an instructor.

Plaintiff filed suit, asserting breach of express or implied contract claims. In response to defendant's motion for summary disposition, plaintiff asserted that her damages included "future lost wages" based on the full wages of a professional midwife for 30 years, in the amount of $97,700 per year for 30 years; plaintiff calculated her total damages at over three million dollars. Defendant filed motions in limine seeking to restrict plaintiff's damages to the cost of the tuition she had paid to defendant, which according to defendant was at most $9,270.85. After several motion hearings, the trial court granted summary disposition in favor of defendant on most of

-1-

plaintiff's claims, including her claim for breach of "the covenant of good faith and fair dealing,"[1] but denied summary disposition regarding plaintiff's claim for breach of the behavior contract. The trial court also issued an opinion and order limiting plaintiff's recoverable damages to "the cost of education," thereby excluding such other claimed damages as future lost wages, stating in relevant part:

> Plaintiff may recover, if and when proven, the costs of her education in a sense broader than tuition and books but limited to what she actually paid. If she paid with borrowed funds, such funds are a measure of damages, so long as she is obligated to pay them back. To the extent she is not required to pay them back but she is precluded from obtaining additional funds (e.g. a one-time grant) her inability to reacquire funds to pay for an education elsewhere formulates an aspect of her damages.

Before trial, the parties stipulated to the entry of a final judgment in favor of plaintiff and against defendant with regard to plaintiff's claim that defendant had breached the behavior contract, and to the dismissal of plaintiff's other claims, with a stipulated damages amount of $15,000 plus a waiver of any remaining debt owed by plaintiff to defendant. The consent judgment reserved plaintiff's right to appeal the trial court's limitation of her damages.

This appeal followed.

## II. LIMITATION ON DAMAGES

Plaintiff argues that the trial court erred by restricting her damages to the costs of her nursing school education. We disagree. The trial court's pre-judgment orders limiting plaintiff's damages were made in the context of a partial grant of summary disposition under MCR 2.116(C)(10), as well as the trial court's partial grant of defendant's motions in limine requesting limitation of damages.

> A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In reviewing a grant of summary disposition under MCR 2.116(C)(10), this Court considers the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. Summary disposition is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. [*Kendzierski v Macomb Co*, 319 Mich App 278, 282; 901 NW2d 111 (2017) (citation omitted).]

---

[1] Plaintiff refers to this covenant as one of "good faith and honest dealing." We use the phrasing typically used by courts in addressing this covenant. See, e.g., *Fodale v Waste Mgt of Mich, Inc*, 271 Mich App 11, 35; 718 NW2d 827 (2006); *Ulrich v Fed Land Bank of St Paul*, 192 Mich App 194, 197; 480 NW2d 910 (1991); *Dahlman v Oakland Univ*, 172 Mich App 502, 507; 432 NW2d 304 (1988).

This Court reviews for an abuse of discretion a trial court's decision to grant or deny a motion in limine. *Bartlett v Sinai Hosp of Detroit*, 149 Mich App 412, 418; 385 NW2d 801 (1986). A trial court is found to have abused its discretion when its decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

Plaintiff argues that the trial court erred by denying her the ability to recover damages for lost future wages and other damages not directly tied to the expense of her nursing education, including the expense of her pre-nursing program education. Plaintiff urges this Court to accept the reasoning of a Florida court in allowing an award of damages for breach of contract to reflect the loss of future educational, professional and wage earning opportunities. See *Sharick v Southeastern Univ of Health Sciences, Inc*, 780 So2d 136, 138 (Fla App, 2000) (*Sharick I*); *Nova Southeastern Univ of the Health Sciences, Inc v Sharick (Following Remand)*, 21 So3d 41 (Fla App, 2009) (*Sharick II*). Plaintiff contends that she sufficiently demonstrated the likelihood of her successful completion of defendant's nursing program and of her progressing to higher educational achievements and professional employment, and that she established with reasonable certainty her claimed financial losses. We hold that the damages plaintiff seeks are not recoverable under Michigan law regarding breach of contract damages.

As recognized by this Court:

> Damages are an element of a breach-of-contract claim. "The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." "[D]amages must not be conjectural or speculative in their nature, or dependent upon the chances of business or other contingencies. . . ." Although breach-of-contract damages need not be precisely established, "uncertainty as to the fact of the amount of damage caused by the breach of contract is fatal[.]" [*Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 550-551; 904 NW2d 192 (2017), oral argument on the application gtd 501 Mich 1069 (2018) (citations omitted).]

Damages are speculative when "they do not arise from [a] purported breach of contract but depend entirely on the occurrence of multiple contingencies which might or might not occur at some point in the future." *Id*. at 553 (citation omitted). It is routinely recognized that "a plaintiff's remedy for breach of contract is limited to *damages that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made*." See, e.g., *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 426 n 3; 751 NW2d 8 (2008) (emphasis added). The intended purpose underlying these concepts is to "place the nonbreaching party in as good a position as if the contract had been fully performed." *Id*. (citation omitted).

Plaintiff's argument appears to blur the lines between the damages compensable in a tort action and those for breach of contract. "A plaintiff cannot maintain an action in tort for nonperformance of a contract. There must be a separate and distinct duty imposed by law. An alleged bad-faith breach of a[] . . . contract does not state an independent tort claim." *Casey v Auto Owners Ins Co*, 273 Mich App 388, 401-402; 729 NW2d 277 (2006) (citations omitted). Plaintiff's complaint and amended complaint are very clear – all of her claims were identified

solely as various permutations of a breach of contract claim.[2] The claim that survived in the trial court, in the final order, was plaintiff's claim for breach of the behavior contract. Thus, plaintiff's damages are restricted to the type of claim pleaded – breach of an express contract. This Court has recognized, in the employment context, a distinction between tort and breach of contract damages with regard to the availability of "future lost wages." *Hord v Environmental Research Institute of Mich*, 228 Mich App 638, 643-644; 579 NW2d 133 (1998), remanded by 459 Mich 960 (1999), rev'd on other grounds after remand 463 Mich 399 (2000).

In this case, defendant's liability relates to a breach of the behavior contract. This contract related specifically to plaintiff's conduct following her enrollment in defendant's nursing program, bore a date of June 10, 2013, after plaintiff's acceptance into the program, and was to remain in effect for the "Duration of the Nursing Program." It also delineated that the failure of plaintiff to abide by the terms of the behavior contract could lead to "failure of the current courses" or "dismissal from the Baker College Nursing Program." It is difficult to construe how plaintiff's pre-nursing program academics or the failure to pursue her alleged later desired educational or professional pursuits comprise "damages that are the direct, natural and proximate result of the breach," *Van Buren Charter Twp*, 319 Mich at 550-551, or how these alleged past and future damages "were in the contemplation of the parties at the time the contract was made," *Allison*, 481 Mich at 426 n 3. The behavior contract arose solely in the context of plaintiff's current academic pursuit and had a definitive duration. There is no indication that the parties to the contract considered her anticipated future academic and professional career and earning capacity. Instead, the behavior contract is unambiguous in regard to the parameters it encompasses – plaintiff's involvement in defendant's specific nursing program.

Further, unlike tort cases where damages may address a loss of future earning capacity, plaintiff has not suffered a permanent injury or debilitation that prevents her from earning a living, or even from earning a living as a midwife, provided she completes her education and licensure at another school. Loss of earning capacity is typically addressed through tort liability. *Nawrocki v Hawkeye Security Ins Co*, 83 Mich App 135, 140; 268 NW2d 317 (1978 (citation omitted).

Plaintiff's argument also runs afoul of a basic principle of contract damages – mitigation. "Mitigation of damages is a legal doctrine that seeks to minimize the economic harm arising from wrongdoing." *Morris v Clawson Tank Co*, 459 Mich 256, 263; 587 NW2d 253 (1998). Specifically:

> Where one person has committed a tort, breach of contract, or other legal wrong against another, it is incumbent upon the latter to use such means as are reasonable under the circumstances to avoid or minimize the damages. The person wronged cannot recover for any item of damage which could thus have been avoided. [*Id*. (citation omitted).]

---

[2] The possible exception is plaintiff's claim for breach of the covenant of good faith and fair dealing. We address that count later in this opinion.

Further:

> In the context of a breach of an employment contract, wrongful discharge, or discriminatory firing, mitigation of damages obligates the victim of the wrongdoing to make reasonable efforts to find employment after discharge. The plaintiff's back-pay award, if he succeeds at trial, is then reduced by the amount that he earned in mitigation. Such a plaintiff may not purposefully remain unemployed or underemployed in order to maximize recoverable damages in the form of lost wages. [*Id.* at 264 (citation omitted).]

Plaintiff testified at her deposition that her efforts to pursue her nursing education after her dismissal from defendant's nursing program consisted of phone calls to the nursing department at Lansing Community College that led her to understand that her dismissal from defendant's program would preclude her admission at Lansing Community College. Plaintiff could not identify the individual she spoke with by telephone and did not receive or provide any verification of the content of the conversation that transpired. She had taken no further steps to secure admission to an alternative nursing program, asserting, "If one says no, I assume all of them would say no." In addition, plaintiff has not attempted to secure other employment. "In both contract and tort actions, an injured party must make every reasonable effort to minimize damages[.]" *Comerica Bank v Cohen*, 291 Mich App 40, 50; 805 NW2d 544 (2010). Plaintiff has failed to expend minimal efforts, let alone reasonable efforts, to mitigate her purported damages.

Notwithstanding the above, plaintiff argues that the relationship between a student and an academic institution is an implied contract that supports the type of damages she claims. In support, plaintiff cites *Booker v Grand Rapids Med College*, 156 Mich 95, 99-100; 120 NW 589 (1909), in which our Supreme Court stated:

> [W]hen one is admitted to a college, there is an implied understanding that he shall not be arbitrarily dismissed therefrom. The required fees may be paid annually, and may be no more than fair fees for the advantages received by the student during the year, and yet it is clear that the fees for the first year are, in fact, paid and received with the understanding that the work of the year will not be made fruitless, a graduation and a degree made impossible, by an arbitrary refusal to permit further attendance. In this understanding there is no want of mutuality. There is no want of good and valuable consideration. There is written evidence of it in the articles of association and the prospectuses of respondent and in the rolls of the college in which relators's names are entered as matriculates. There is no good reason why the law should not recognize, as growing out of these relations, a right of relators resting in contract to be continued as students by the respondent.

We note that in *Booker* the Court was dealing with an implied contract and the obligations that arise after admission to an educational institution, rather than an express contract. Typically, an implied contract will not be found "when the subject matter clearly is governed by express contracts." *Landstar Express America, Inc v Nexteer Auto Corp*, 319 Mich App 192, 201; 900 NW2d 650 (2017). Here, it is the express behavior contract that is at issue

and not a more generalized implied contract regarding the parties' respective rights and obligations. More importantly, even if plaintiff's claim was based on an implied contract theory, *Booker* does not stand for the proposition that an academic institution, in accepting a student, guarantees that the student will complete the program, receive a degree, receive the relevant licensure, and maintain full employment at a particular salary for the duration of the student's career. Whether based on an express or implied contract, plaintiff's damages are still restricted or limited to those that are "the direct, natural, and proximate result of the breach," *Van Buren Charter Twp*, 319 Mich App at 550-551, or "that were in the contemplation of the parties at the time the contract was made," *Allison*, 481 Mich at 426 n 3. Besides presenting a perverse incentive (for a student who is expelled from an academic program to seek a lifetime of wages without having to actually complete a degree, obtain a license, interview for an obtain a position, and actually work) plaintiff's argument that she is entitled to wage loss damages for the entirety of her potential professional life is simply too speculative and dependent on a multitude of contingencies that are uncertain. *Van Buren Charter Twp*, 319 Mich App at 553; see also *Chelsea Investment Group, LLC v Chelsea*, 288 Mich App 239; 792 NW2d 781 (2010).

We also decline to adopt plaintiff's characterization of the Florida District Court of Appeals's reasoning in *Sharick II*, 21 So3d at 42-43. In *Sharick II*, a medical student (Sharick) was dismissed from the osteopathic medicine program at the Southeastern University of Health Sciences, Inc., two months before receipt of his medical degree. A jury awarded Sharick "$813,000 for earnings lost in the past and $3.5 million (present value) for earnings that he would lose in the future." *Id*. at 42-43. This verdict was upheld on appeal. *Id*.

Besides not being binding on this Court, *Sharick II* is significantly different both factually and legally from the instant case. First, a jury determined that Sharick's dismissal from the medical program mere months before receiving his degree "was arbitrary, capricious, and/or lacking any discernable rational basis." *Id*. at 42 (citation omitted). Second, Sharick was involved in a multi-year medical program, with his dismissal occurring two months before completion. Plaintiff was enrolled in an 18 month associate degree nursing program, with her termination occurring after her completion of approximately one-third of the program. Third, a jury determined that Sharick "could not obtain a DO degree from another institution[.]" *Id*. at 43. Here, plaintiff merely asserts, based on one or more phone calls to Lansing Community College, that she will now never be able to obtain entry to a nursing program anywhere.

Further, the Florida court recognized that Sharick would be required to mitigate his damages. *Sharick I*, 780 So2d at 138 ("we recognize the potential for mitigation of damages if Sharick fails to establish that it would be impossible for him to obtain a DO degree at another institution. In that event, the appropriate measure of damages would only be the reproduction cost of acquiring the degree elsewhere. This would include a calculation of the present value of his lost income during the time period needed to acquire the degree, coupled with the tuition and associated costs incurred at the new school."). In any event, to the extent that *Sharick I* or *II* can be read as supporting the proposition that a student in plaintiff's position may recover a full career's worth of wages from her chosen future career, that proposition is not supported by the law of Michigan. Plaintiff similarly over-reads a case from the Court of Appeals of Ohio, *Habegger v Owens Community College*, 2017-Ohio-8180 (Ohio App, 2017), involving a school's loss of accreditation; contrary to plaintiff's assertion, *Habegger* confirms that the damages compensable are only those that are directly attributable to the breach of contract and

must be established by actual evidence of loss and not mere speculation. We do not in any event find these decisions from other jurisdictions persuasive of anything in the context of this case. *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006). And to the extent plaintiff argues that we should adopt her position as a matter of public policy, "such a decision should come from the Legislature, not the judiciary." *Terrien v Zwit*, 467 Mich 56, 70; 648 NW2d 602 (2002).

### III. BREACH OF COVENANT OF GOOD FAITH

Plaintiff argues that the trial court erred by dismissing her claim for breach of a covenant of good faith and fair dealing. We disagree.

Plaintiff pleaded this claim as a separate count in her amended complaint. The trial court rejected plaintiff's contention that "a cause of action [is] created by any public policy consideration or breach of good faith covenant." We agree with the trial court.

This Court has consistently stated that it declines to "recognize" a breach of an implied covenant of good faith and fair dealing between parties to a contract as "a cause of action, because such a radical departure from the common law and Michigan precedent should come only from the Supreme Court." *Dahlman v Oakland Univ*, 172 Mich App 502, 507; 432 NW2d 304 (1988). See also *Ulrich v Fed Land Bank of St Paul*, 192 Mich App 194, 197; 480 NW2d 910 (1991) ("Michigan does not recognize an independent tort action for an alleged breach of a contract's implied covenant of good faith and fair dealing."); *Fodale v Waste Mgt of Mich, Inc*, 271 Mich App 11, 35; 718 NW2d 827 (2006) ("Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing."). Thus, premised on plaintiff's pleading of this as a separate or independent count within her amended complaint, the trial court correctly granted summary disposition in favor of defendant on this claim. Plaintiff does not argue that the trial court incorrectly granted summary disposition on any of her other breach of contract claims. And to the extent she argues that defendant's breach of the behavior contract was based on a breach of an implied covenant of good faith and fair dealing, defendant has already stipulated to its liability on that claim. Plaintiff's argument, even if correct, would make no difference to the availability of the type of damages she claims.

Affirmed.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood